**HUMANA HOSPITAL CORPORATION, INC., Relator,**

v.

**Honorable Carolyn SPEARS– PETERSEN, Respondent.**

No. 04–93–00659–CV.

Court of Appeals of Texas, San Antonio.

Dec. 15, 1993.

Ty Griesenbeck, Jr., Deborah L. Klein, Plunkett, Gibson & Allen, Inc., San Antonio, for relator Humana Hosp.

Rosemary L. Hollan, Foster, Lewis, Langley, Gardner & Banack, August C. Toudouze, San Antonio, for respondent Spears–Petersen.

Before BUTTS, GARCIA and RICKHOFF, JJ.

## OPINION

GARCIA, Justice.

This original mandamus proceeding involves the confidentiality of accreditation re-

ports prepared by the Joint Commission on Accreditation of Healthcare Organizations in its survey of Humana Hospital–San Antonio (the hospital).[1] We hold that the reports are privileged from discovery.

The underlying suit is a medical malpractice action brought by Margaret G. Garcia against Dr. Govind P. Garg and relator Humana Hospital Corporation. Garcia alleges that she was scheduled to receive a cervical epidural steroid injection but was given instead a lumbar epidural steroid injection by Dr. Garg at the hospital on April 18, 1990 without her permission or informed consent. Garcia sued Garg under TEX.REV.CIV.STAT. ANN. art. 4590i (Vernon Supp.1993) alleging battery, lack of informed consent, fraud, negligence, and gross negligence.

Garcia sued Humana for negligent credentialing and negligent supervision and monitoring of Garg's clinical privileges and competency. She also alleged that Humana's conduct was willful or constituted conscious indifference.

Humana received notices of intention to take the oral depositions duces tecum of Andy Williams, the hospital's chief operating officer, and Susan Rothenberg, an employee of the hospital in 1990. The lists of requested documents were identical for both notices. Humana filed objections to many of the document categories and simultaneously filed a motion for protective order.

At the hearing on Humana's objections and motion, Humana produced in a sealed envelope copies of reports prepared by the Joint Commission regarding the accreditation of the hospital for the years 1987–90. The documents include a "written progress report" prepared by a team of surveyors employed by the Joint Commission and an award of accreditation contingent on compliance with the recommendations set out in the report. The recommendations note where the hospital has failed to meet certain of the Joint Commission's published standards and sug-

1. The Joint Commission on the Accreditation of Healthcare Organizations was previously known as the Joint Commission on the Accreditation of Hospitals. This organization will be referred to in this opinion as "the Joint Commission."

gest measures for achieving those goals. Subsequent correspondence notes the removal of contingencies based on the hospital's compliance with accreditation standards.

After *in camera* inspection, respondent denied Humana's motion for protective order as to these documents. Respondent allowed Humana to redact from the copies any information not pertaining to credentialing, monitoring, or supervision practices of the hospital in regard to its physicians. It is of this portion of the order that Humana complains in its petition for writ of mandamus.

█ Mandamus lies to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Thus, a clear failure to analyze or apply the law correctly will constitute an abuse of discretion. *Id.* There is no adequate remedy by appeal of an order that requires the production of privileged information that will materially affect the rights of the aggrieved party. *Id.* at 843. The burden of proof to establish the existence of a privilege rests on the one asserting it, in this case, Humana. *Peeples v. Honorable Fourth Supreme Judicial District*, 701 S.W.2d 635, 637 (Tex.1985).

Humana asserts that the discoverability of the Joint Commission reports is a case of first impression. A privilege for hospital review committee deliberations is, however, recognized by statute and case law.

"The records and proceedings of a medical committee are confidential and are not subject to court subpoena." Tex.Health & Safety Code Ann. § 161.032(a) (Vernon 1992) (formerly article 4447d(3)). The statute defines "medical committee":

(a) In this subchapter, "medical committee" includes any committee, including a joint committee of:

(1) a hospital;

(2) a medical organization;

(3) a university medical school or health science center;

(4) a health maintenance organization . . .;

(5) or an extended care facility.

(b) The term includes a committee appointed ad hoc to conduct a specific investigation or established under state or federal law or rule or under the bylaws or rules of the organization or institution.

Tex.Health & Safety Code Ann. § 161.031 (Vernon 1992).

█ The supreme court has construed the privilege in a series of cases.

The purposes of medical research and education, and the improvement of medical treatment, in any particular hospital or medical care facility is [sic] served by the free and uninhibited discussion of all events and experiences within the hospital or facility. The Legislature by this amendment must have intended to protect and encourage open and thorough review and investigation by making the records and proceedings of *any* such committee confidential by expressly providing that they "shall not be available for court subpoena."

*Texarkana Memorial Hosp., Inc. v. Jones*, 551 S.W.2d 33, 35 (Tex.1977) (emphasis in original) (quoting art. 4447d, § 3). The court reasoned that if the records were beyond the reach of court subpoena, "then the deliberations of every group of persons constituted by the rules and bylaws of the hospital in its service is [sic] placed behind the veil." *Id.*

[T]he statutory language, "records and proceedings" means those documents generated by the committee in order to conduct open and through review. In general, this privilege extends to documents that

have been prepared by or at the direction of the committee for committee purposes. Documents which are gratuitously submitted to a committee or which have been created without committee impetus and purpose are not protected.

*Jordan v. Court of Appeals*, 701 S.W.2d 644, 647–48 (Tex.1985). The privilege extends to minutes, correspondence between members relating to the deliberation process, and any final committee work product such as recommendations. *Id.* at 648.

The privilege serves the limited purpose of protecting uninhibited discussion of matters subject to committee review and, thus, extends only to information "sought out or brought to the attention of the committee for purposes of an investigation, review, or other deliberative proceeding." *Barnes v. Whittington*, 751 S.W.2d 493, 496 (Tex.1988). *See also Harris Hosp. v. Schattman*, 734 S.W.2d 759, 761 (Tex.App.—Fort Worth 1987, orig. proceeding) (purpose of the privilege is to encourage "open and thorough review" of the staff and procedures of the hospital). Thus, letters requesting information regarding credentials and experience of the physicians, while potentially useful for committee deliberations, were held to be routine administrative records prepared by the hospital in the ordinary course of business and were not protected by the privilege. *Barnes*, 751 S.W.2d at 496. *See also* TEX.HEALTH & SAFETY CODE ANN. § 161.032(c) (Vernon 1992) (records made or maintained in the regular course of business by a hospital are not confidential).

■ Williams testified that the Joint Commission is an organization that surveys and accredits hospitals across the country. The accreditation is voluntary, and the hospital has chosen to have the accreditation done. For its accreditation the Joint Commission looks at certain set standards for hospitals to abide by in maintaining quality care. Humana's executive committee is charged by the hospital's by-laws to keep abreast of the accreditation process. The Joint Commission sends a team of accreditors to the hospital to review its procedures and meet with its staff. The information from the Joint Commission is provided only to the medical staff and to the hospital.

The court, without objection, took judicial notice that the Joint Commission is a recognized organization in a health care community for maintaining medical standards at hospitals. Full accreditation is for a period of three years. The hospital was accredited by the Joint Commission for the years 1987 through 1990, and reaccredited in 1990.

The Joint Commission is directed by a 22–member board of commissioners whose members are appointed by the American Medical Association, the American Hospital Association, the American College of Physicians, the American College of Surgeons, and the American Dental Association. One member is a private citizen. The accreditation process includes: (1) the development of reasonable standards that every organization should be expected to meet and that the health professions agree will have a positive effect on patient care, (2) the voluntary request for survey, (3) the survey of the healthcare organization by professionals who assess compliance with the standards and provide consultation to promote achievement of greater levels of compliance, and (4) the use of the standards and survey results by the surveyed organization to improve patient care. The information obtained in the survey process is held in confidence between the Joint Commission and the organization surveyed.

Humana argues that the Joint Commission reports clearly fall within the privilege provided in sections 161.031 and 161.032. It asserts that hospitals, under an assurance of confidentiality, voluntarily cooperate with the Joint Commission investigations and openly discuss problem areas and methods of improvement in a candid manner of self-inquiry in order to improve patient care. Humana argues that release of the Joint Commission recommendations would do more than "chill" the effectiveness of such accreditations—no prudent hospital would discuss or release any

information to the Joint Commission knowing that it could be used against it in malpractice suits.

Garcia argues first that the Joint Commission is not a "medical committee" as defined in section 161.031. The determinative factor is not whether the entity is known as a "committee," or a "commission," or by any other particular term, but whether it is organized for the purposes contemplated by the statue and the case law. We think it is clear from the evidence we have detailed that the Joint Commission is a joint committee made up of representatives of various medical organizations and thus fits within the statutory definition. Section 161.031(a)(2).[2] Further, it is organized, as are the various in-house medical committees that indisputably come within the statute, for the laudable purpose of improving patient care. Both the statute and the case law recognize that the open, thorough, and uninhibited review that is required for such committees to achieve their purpose can only be realized if the deliberations of the committee remain confidential.

■ Garcia also makes a waiver argument, contending that the Joint Commission report was voluntarily disclosed to a third party— the hospital. The only disclosure, however, was to the hospital as the intended beneficiary of the committee's findings. The only disclosure made to the outside world was the accreditation certificate, which merely declares that the hospital has been awarded accreditation by the Joint Commission. The report has remained confidential between the Joint Commission and the hospital.

*Jordan* is a waiver case. In that case the plaintiffs sought discovery of various hospital documents including the papers of various hospital committees. A number of the requested documents had come into the possession of the Bexar County Grand Jury. The court held that the real parties at issue had failed to carry their burden to show that no

waiver had occurred. 701 S.W.2d at 649. In the present case, there has been no disclosure outside the closed circle of the reviewing committee and the subject of its review.

■ Garcia's final argument is that the documents in question constitute routinely accumulated information developed in the course of the accreditation process and therefore enjoy no privilege. *Jordan* makes clear that "any final committee product, such as recommendations ..." is privileged. 701 S.W.2d at 648. The documents in question set out the results of the Joint Commission's survey, including deficiencies in compliance along with the Commission's recommendations for meeting its standards. Further correspondence notes when compliance in each deficient area has been achieved. *Jordan* makes clear that the privilege does not extend to "[d]ocuments which are gratuitously submitted to a committee or which have been created without committee impetus...." 701 S.W.2d at 648. Such documents include routine administrative records prepared by hospitals in the ordinary course of business. *Barnes,* 751 S.W.2d at 496. Clearly the documents in question reflect the deliberative process of the Joint Commission and are therefore privileged. *Id.*

Respondent abused her discretion in ordering production of the Joint Commission reports. We are confident that Judge Spears–Petersen will vacate her November 3 order regarding the Joint Commission reports (Defendant's Exhibit 7) and issue an order granting Humana's motion for protective order as to those documents. The writ of mandamus will issue only if Judge Spears–Petersen fails to do so.

---

**2.** Although the statute refers to a joint committee of *a* medical organization, we note that the Code Construction Act provides that the singular tense includes the plural. TEX.GOV'T CODE ANN. § 311.012(b) (Vernon 1988). Thus the definition of medical committee also includes a joint committee of multiple medical organizations.