**In re Donna PACK, Ann Bowling, and Linda Pearson, Individually and as Representatives of the Estate of James Watson, Relators.**

No. 2–99–160–CV.

Court of Appeals of Texas, Fort Worth.

July 8, 1999.

Rehearing Overruled Aug. 12, 1999.

## OPINION

SAM J. DAY, Justice.

In this original proceeding, we must decide whether nursing home investigation reports prepared by the Texas Department of Human Services (TDHS), a nursing home's responsive plans of correction, and the testimony of TDHS surveyors regarding their investigations are excluded from discovery under the peer-review privilege. Because we conclude that such information is not exempt from discovery under the peer-review privilege, we conditionally grant the writ of mandamus.

### Background Facts and Procedural History

The underlying case is a wrongful death and survival action that relators[1] have filed against Crossroads, Inc., d/b/a Watson Memorial Nursing Home (the Nursing Home).[2] The decedent, James Watson, was admitted to the Nursing Home on August 18, 1995. After residing at the Nursing Home for 36 days, Watson was transferred to Harris Methodist Hospital on September 24, 1995, where he eventually died. The lawsuit centers around whether Watson's death was caused by his long-term medical condition or by the Nursing Home's treatment of him while he was a resident there.

After Watson was admitted to the hospital, hospital personnel notified TDHS of concerns about his possible abuse or neglect by the Nursing Home. On September 25, 1995, two TDHS surveyors, Janet Drake and Bettye Reed, went to the Nursing Home and investigated the complaint. Drake and Reed's investigation took several days and extended to Nursing Home residents besides Watson. After completing their investigation, Drake and Reed prepared a report of their findings, to

Suchocki & Associates, Jerry D. Bullard, Bernardr Suchocki, Fort Worth, for Relators.

Friend & Associates, Gail N. Friend, Houston, Hill Gilstrap, Frank Hill, Arlington, for Real Party in Interest.

Panel A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

1. Relators are Donna Pack, Ann Bowling, and Linda Pearson, individually and as representatives of the estate of James Watson.

2. Relators have also sued Sharon Chapman, Bessie Stovall, Theresa Butler, and Gail Shaver, but those individuals are not parties to this original proceeding.

which the Nursing Home responded with a plan of correction.

In January 1996, before suit was filed, relators obtained TDHS's report of the September 1995 investigation, together with the Nursing Home's plan of correction, via an open records request. After suit was filed, relators asked the trial court to compel the Nursing Home to produce some of the TDHS records in response to a document request. The 48th District Court of Tarrant County (the trial court) denied relator's motion to compel in September 1997, ruling that the requested documents were exempt from discovery under the " 'peer review' privilege."

In April 1998, relators filed their Notice of Filing of Records from TDHS, which included numerous TDHS records concerning the care and treatment the Nursing Home had provided its residents. The Nursing Home objected to relators' notice of filing on the ground that the TDHS records were not discoverable.

On November 4, 1998, relators gave notice of their intent to depose Drake and Reed. The Nursing Home moved to quash the depositions and sought a protective order. They renewed their objections to relators' notice of filing the TDHS records and asked the trial court to strike the notice. After a hearing, the trial court quashed the deposition notices and prohibited relators from using the TDHS records for any purpose in the underlying lawsuit, "subject to order of the court." However, the trial court did not strike relators' notice of filing.

Relators ask this court to direct the trial court to vacate its rulings that the TDHS records and the surveyors' testimony are covered by the peer-review privilege, to order the trial court to permit use of the TDHS records during discovery and trial, and to permit relators to depose Drake and Reed and to use their testimony at trial.

Also pending are the Nursing Home's motions to dismiss this proceeding and to remove the TDHS records from our open file.

## Standard of Review

■ Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig.proceeding). A party will not have an adequate remedy by appeal: (1) when the appellate court will not be able to cure the trial court's discovery error; (2) where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; and (3) where the trial court disallows discovery, and the missing discovery cannot be made a part of the appellate record or the trial court after proper request refuses to make it part of the record. *See Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992) (orig.proceeding).

## The TDHS Records and Surveyors' Testimony are Not Exempt Under the Peer–Review Privilege

The Nursing Home contends TDHS is a medical peer-review committee and engaged in peer-review activity because it served as an agent of the Nursing Home's peer-review committee when it investigated the hospital's complaint concerning Watson. Regardless of whether the Nursing Home's contentions are correct, the information at issue is not exempt from disclosure under the peer-review privilege. The Medical Practice Act provides:

> *Unless disclosure is required or authorized by law,* records or determinations of or communications to a medical peer review committee are not subject to subpoena or discovery and are not admissible as evidence in any civil judicial or administrative proceeding. . . .

TEX.REV.CIV. STAT. ANN. art. 4495b, § 5.06(j) (Vernon Supp.1999) (emphasis added).

We hold disclosure of the TDHS records and the surveyors' testimony is either required or authorized by law.[3] For example, licensed nursing homes are required by law to

> conspicuously and prominently post ... a notice in a form prescribed by DHS that inspection and related reports are available at the facility for public inspection....
>
> ....
>
> The inspection reports and related reports that will be available at the facility for public inspection must include licensing inspection reports, deficiency sheets, and plan[s] of correction ... and summaries provided by the DHS of inspections and complaint investigations. This material must cover the most current 12 months.

40 TEX. ADMIN. CODE §§ 19.1921(e)(3), (h) (West 1998).

■ The documents at issue here are TDHS's licensing inspection reports, deficiency sheets, and summaries, and the Nursing Home's plans of correction. Thus, their disclosure is required by law. Indeed, the TDHS records that relators obtained in January 1996 concerning TDHS's September 1995 investigation were records that the Nursing Home was required to make publicly available *at its own facility.* Moreover, all records maintained by TDHS's long-term regulatory care division "are open to the public," as long as names and other personally identifiable data are removed. 40 TEX. ADMIN. CODE §§ 19.2010(a)(1), 19.2011(e) (West 1998); *Brewer v. Capital Cities/ABC, Inc.,*

986 S.W.2d 636, 643 (Tex.App.—Fort Worth 1998, no pet.).

■ The Nursing Home contends that the TDHS records were prepared from confidential information that the Nursing Home's peer-review committee provided TDHS. However, there is no evidence that the TDHS records *disclose* any such confidential information. If the Nursing Home wished to establish that the TDHS records disclosed information that is not public under title 40, section 19.1921 of the Texas Administrative Code, it had the burden of tendering that information to the trial court in camera. *See Arlington Mem. Hosp. Found. v. Barton,* 952 S.W.2d 927, 930 (Tex.App.—Fort Worth 1997, orig. proceeding). The mere fact that the Nursing Home's peer-review committee may have reviewed the TDHS documents does not make them privileged. "[I]nformation that is available from a source other than the [peer-review] committee does not become privileged simply by being acquired by the review committee." *Irving Healthcare Sys. v. Brooks,* 927 S.W.2d 12, 18 (Tex.1996) (orig.proceeding). Because the TDHS records are public information, the trial court erred by prohibiting relators from using them in the underlying lawsuit.[4]

■ The trial court also erred in quashing the depositions of the TDHS surveyors. The human resources code provides:

> A [TDHS] surveyor or investigator may testify in a civil action as to observations, factual findings, conclusions, or violations of requirements for licensure or for certification for participation in the state Medicaid program that were

---

3. The Nursing Home seems to argue that disclosure is not required or authorized by law unless it is specifically enumerated in article 4495b, section 5.06. We do not read this statute so narrowly. If the legislature intended such an interpretation, it could have worded subsection j to read "[u]nless disclosure is required or authorized *by this article* ...."

4. Our decision should not be interpreted as a ruling that all documents generated by

TDHS are public information. *See, e.g.,* TEX. HEALTH & SAFETY CODE ANN. § 242.049 (Vernon Supp.1999), which provides that "quality improvement reports" developed by TDHS for nursing home use are not discoverable. But documents such as TDHS survey and investigation reports are not quality improvement reports. *See id.* § 242.049(b); *Brewer,* 986 S.W.2d at 644.

made in the discharge of official duties for [TDHS]....

TEX. HUM. RES.CODE ANN. § 32.021(k) (Vernon Supp.1999).

The record shows that Drake and Reed's September 1995 investigation of the Nursing Home had dual purposes: it was both a licensing inspection and a complaint investigation. Thus, their testimony about their observations, factual findings, and conclusions regarding whether the Nursing Home violated any standards for participation in the state Medicaid program is "authorized by law." TEX.REV.CIV. STAT. ANN. art. 4495b, § 5.06(j). The Nursing Home argues that testimony about whether it violated Medicaid standards is inapplicable to a medical malpractice case. This argument begs the question of whether such evidence is covered by the peer-review privilege. The health and safety code clearly provides that it is not. Whether such testimony is relevant to relators' medical malpractice claims is not before us.

The Nursing Home also infers that relators will attempt to treat Drake and Reed as expert witnesses to establish that the Nursing Home has violated a standard of care applicable in the underlying lawsuit. *See id.* art. 4590i, §§ 13.01, 14.01 (Vernon Supp.1999) (requiring plaintiff in medical malpractice action to prove violation of standard of care through expert testimony). However, relators indicated in the trial court that they merely wish to call Drake and Reed as fact witnesses, something they are authorized by statute to do. *See* TEX. HUM. RES.CODE ANN. § 32.021(k). Moreover, a discussion of whether Drake and Reed are qualified to testify as experts would be premature. Like relevance, that issue must first be raised in and addressed by the trial court. *See Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 410–11 (Tex.), *cert. denied,* 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

**No Adequate Remedy at Law**

Because neither the TDHS records nor the surveyors' testimony is exempt from discovery under the peer-review privilege, the trial court abused its discretion by prohibiting relators from using the TDHS records during discovery and at trial. The trial court also abused its discretion by quashing Drake's and Reed's depositions.

Relators have no adequate remedy at law because the prohibition against use of the TDHS records will severely hamper their ability to test or develop the merits of their claims below. Much of the information in the TDHS records, although public, is not available from any source other than TDHS or the Nursing Home, and the trial court denied relators' motion to compel the Nursing Home to produce it. Further, if relators are not allowed to depose Drake and Reed, their testimony cannot be made a part of the appellate record; thus, we would not be able to cure this error on appeal.

**Conclusion**

We are confident that the trial court will vacate its orders prohibiting relators from deposing Drake and Reed and from using the TDHS documents. Our mandamus will issue only if the trial court does not do so. We deny the Nursing Home's motions to dismiss and to remove the TDHS records from our open file.