# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00184-CV

### Ebony Lake Healthcare Center, Appellant

### v.

### Texas Department of Human Services and Attorney General for the State of Texas, Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. GN001990, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

Appellee Texas Department of Human Services (the Department) received a request for release of certain documents regarding appellant Ebony Lake Healthcare Center (Ebony Lake), pursuant to the Public Information Act. *See* Tex. Gov't Code Ann. §§ 552.001-552.353 (West 1994 & Supp. 2001). Ebony Lake informed the Department that it considered some of the documents privileged. Accordingly, the Department requested an attorney general's opinion. The Attorney General found that the documents in question were not privileged and ordered the documents released. Ebony Lake subsequently sought a declaratory judgment, asking the trial court to declare the documents subject to a confidentiality privilege; in conjunction with the suit, Ebony Lake also sought a temporary injunction. The trial court denied the temporary injunction, and Ebony Lake brings this interlocutory appeal from that ruling. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (West Supp. 2001). We will reverse the trial court's order denying the temporary injunction and remand the cause to the trial court.

**BACKGROUND**

On February 23, 2000, an attorney representing family members of an Ebony Lake resident sent an open records request to the Department, seeking among other items all incident reports sent by Ebony Lake to the Department. On April 6, Ebony Lake informed the Department that it considered some of the documents privileged from disclosure. Based on this information, the Department requested an attorney general's opinion concerning the confidentiality of the documents. The Attorney General determined that the documents were not subject to the asserted privileges and should be disclosed.

Ebony Lake then filed a declaratory judgment suit, seeking a judicial determination that the documents were subject to the asserted privileges. In conjunction with the suit, Ebony Lake sought a temporary restraining order to prevent the release of the documents. On August 20, 2000, visiting Judge Pete Lowry granted the temporary restraining order and set the matter for a temporary injunction hearing. Following the hearing, Judge Lowry granted the temporary injunction in part.[1] The order signed by the trial court, however, failed to include a date for a trial on the merits and failed to set a bond.

---

[1] Judge Lowry signed three orders, which are not readily reconcilable. One order purports to deny the temporary injunction in part, one grants it in part, and one is simply titled Order on Temporary Injunction. The thrust of the orders, however, appears to be that the Department is enjoined from releasing the documents that were submitted to the court for *in camera* inspection. The temporary injunction is denied as to any other documents that may not have been submitted. The order is further stayed until all appeals or mandamuses are exhausted. For purposes of our discussion, we refer only to the order granting the temporary injunction and prohibiting the Department from releasing the documents submitted to the trial court for *in camera* inspection.

2

On January 9, 2001, the Department and the Attorney General filed a joint motion to dissolve Judge Lowry's order, claiming that it was void *ab initio* because it failed to set a trial date or a bond. Judge Darlene Byrne considered the motion and agreed that the order was void.

Thereafter, the trial court granted a second temporary restraining order and held a second temporary injunction hearing. At the hearing, the parties and the trial court agreed to adopt all evidence and exhibits from the first temporary injunction hearing, and the trial court heard legal arguments. Following the hearing, the trial court denied the application for temporary injunction. Ebony Lake requested findings of fact and conclusions of law, which the trial court declined to file. Ebony Lake now appeals the trial court's denial of its application for temporary injunction and the trial court's ruling that the initial temporary injunction order was void.

## DISCUSSION

Judge Lowry entered an order granting Ebony Lake's application for temporary injunction in part on August 28, 2000. More than four months later, the Department and the Attorney General filed a joint motion to dissolve the temporary injunction, arguing that the order was void on its face because it failed to include a date for a trial on the merits and failed to set a bond amount. The trial court agreed and declared the order void. By its second issue, Ebony Lake claims the trial court erred in declaring the first temporary injunction order void.

Rule 684 of the Texas Rules of Civil Procedure provides: "In the order granting any . . . temporary injunction, the court shall fix the amount of security to be given by the applicant." Tex. R. Civ. P. 684. This rule has been strictly construed. Before a trial court issues a temporary injunction, the applicant must execute a bond to the adverse party and file the bond with the court

3

clerk.  *Chambers v. Rosenberg*, 916 S.W.2d 633, 634 (Tex. App.—Austin 1996, writ denied). Orders filed without a bond are void.  *Id.*

Similarly, Rule 683 provides: "Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought." Tex. R. Civ. P. 683.  The requirements of Rule 683 are mandatory, and an order that does not comply with the rule is fatally defective and void.  *Interfirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986); *University Interscholastic League v. Torres*, 616 S.W.2d 355, 357-58 (Tex. App.—San Antonio 1981, no writ).

Finally, both the supreme court and this Court have held that "a judgment which discloses its invalidity on its face is a nullity and may be disregarded anywhere at any time." *Chambers*, 916 S.W.2d at 635; *accord Fulton v. Finch*, 346 S.W.2d 823, 827 (Tex. 1961).  The trial court correctly applied this rule in declaring the initial temporary injunction order void.  We overrule Ebony Lake's second issue.

Having determined that the initial order granting Ebony Lake's application for a temporary injunction was void, we next consider whether the trial court erred in denying Ebony Lake's second request for a temporary injunction.  In an appeal from an order denying a request for a temporary injunction, our review is confined to the validity of the order denying the injunctive relief. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Universal Health Servs. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.).  The decision to grant or deny the temporary injunction lies within the sound discretion of the trial court; we will not disturb that decision absent a clear abuse of discretion.  *Thompson*, 24 S.W.3d at 576.  This Court may neither substitute its

4

judgment for that of the trial court nor consider the merits of the lawsuit. *Id.* Rather, we view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion. *Id.*

In a temporary injunction hearing, the trial court assesses whether the applicant has shown a probable right to recovery and a probable injury in the interim. *Id.* To establish a probable right to recovery, an applicant need not prove that it will ultimately prevail in the litigation; rather, the applicant must show it has a cause of action for which it may be granted relief. *Id.* Probable right to recovery includes the element of wrongful conduct. *Id.* At this preliminary stage, the applicant need not prove that the information subject to the Public Information Act is privileged. *See Center for Econ. Justice v. American Ins. Ass'n*, 39 S.W.3d 337, 343 (Tex. App.—Austin 2001, no pet.). The applicant need only demonstrate that it is entitled to protection and the status quo should be maintained until a trial on the merits commences.

Ebony Lake claims it established a probable right to recovery because it has a claim based on the Public Information Act. *See* Tex. Gov't Code Ann. §§ 552.001-.353. Ebony Lake further argues that it established a likelihood of success on the merits by presenting competent, uncontroverted evidence that the reports at issue were created by a medical peer review committee and are therefore confidential.

The Texas Public Information Act governs access to governmental information. Tex. Gov't Code Ann. §§ 552.001-.353. At the heart of the Act is the principle that the public is entitled to all information "collected, assembled, or maintained by a governmental body." *Holmes v. Morales*,

5

924 S.W.2d 920, 922 (Tex. 1996); *accord* Tex. Gov't Code Ann. § 552.002(a)(1) (West Supp. 2001). However, the Act provides that information is excepted from public disclosure if it is considered confidential by either constitutional or statutory law or by judicial decision. Tex. Gov't Code Ann. § 552.101 (West 1994).

Whether information is subject to disclosure under the Public Information Act and whether an exception applies are legal questions of statutory construction. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000); *Center for Econ. Justice*, 39 S.W.3d at 347. A trial court abuses its discretion when it misapplies the law to the facts. *Center for Econ. Justice*, 39 S.W.3d at 347.

Ebony Lake claims on appeal that the information sought is made confidential by the medical peer review committee privilege ("peer review privilege"). Tex. Occ. Code Ann. § 160.007 (West 2001). The Medical Practice Act provides: "[E]ach proceeding or record of a medical peer review committee is confidential, and any communication made to a medical peer review committee is privileged." Tex. Occ. Code Ann. § 160.007(a). Medical peer review committee is defined as

> a committee of a health care entity, the governing board of a health care entity, or the medical staff of a health care entity, that operates under written bylaws approved by the policy-making body or the governing board of the health care entity and is authorized to evaluate the quality of medical and health care services or the competence of physicians.

*Id.* § 151.002(a)(8) (West 2001). The Act defines medial peer review as "the evaluation of medical and health care services, including evaluation of the qualifications of professional health care practitioners and of patient care provided by those practitioners." *Id.* § 151.002(a)(7).

6

In determining whether Ebony Lake established the elements necessary for temporary injunctive relief, the trial court considered whether Ebony Lake had a probable right to prevail on its claim of privilege. In support of its claim to a privilege, Ebony Lake presented the documents at issue for *in camera* inspection and produced its quality assurance committee policy, along with testimony from the facility administrator, Del Waggoner. The documents themselves detail three different accidents involving residents at the facility. They include witnesses' observations of the incidents, along with any subsequent action taken by the facility, including any actions directed toward its employees as a result of the incidents. Finally, the reports include diagnoses of the residents following their transport to the hospital.

Waggoner testified that the incident reports were "processed" by the quality assurance committee and handled through the committee process. Waggoner also testified that at least one of the documents was created following an investigation performed by an "expression" of the quality assurance committee. He added that this investigation would have been conducted even if the committee had elected not to file any incident report with the Department. On cross-examination, Waggoner conceded that one of the reports would not have been filed with the Department if a complaint had not been lodged against the facility.

In response, appellees maintain that because Ebony Lake was required by law to file its reports with the Department, *see* Health & Safety Code Ann. § 242.122 (West 2001), the reports constitute business records, which are public information. *See In re Pack*, 996 S.W.2d 4, 7 (Tex. App.—Fort Worth 1999, orig. proceeding.). In addition, appellees argue that Ebony Lake cannot satisfy the strict requirements mandated by *Jordan v. Court of Appeals for the Fourth Supreme*

7

*Judicial District*, 701 S.W.2d 644 (Tex. 1985), in order to assert a privilege. We will first address the applicability of *Jordan* to the facts of this case.

According to appellees, *Jordan* mandates that in order for a party to successfully assert a privilege, the party must establish that the documents at issue were (1) created with committee impetus and purpose, and (2) not "gratuitously submitted to a committee." *Id.* at 648. *Jordan* addressed the predecessor to section 161.032 of the Health and Safety Code, or the medical committee privilege.[2] The statutory definition of "medical committee" is broad in scope and encompasses a medical peer review committee. *Memorial Hosp.—The Woodlands v. McCown*, 927 S.W.2d 1, 8 (Tex. 1996); *Irving Healthcare Sys. v. Brooks*, 927 S.W.2d 12, 20 (Tex. 1996). In considering the scope of the privilege provided by that section, the supreme court narrowly construed its applicability and held: "[T]his privilege extends to documents that have been prepared by or at the direction of the committee for committee purposes. Documents which are gratuitously submitted to a committee or which have been created without committee impetus and purpose are not protected." *Jordan*, 701 S.W.2d at 648.

---

[2] That statute provided :

> The records and proceedings of any hospital committee, medical organization committee or extended care facility committee established under the state or federal law or regulations or under the by-laws, rules or regulations of such organization or institution shall be confidential and shall be used by such committee and the members thereof only in the exercise of the proper functions of the committee and shall not be public records and shall not be available for court subpoena; provided, however, that nothing herein shall apply to records made or maintained in the regular course of business by a hospital or extended care facility . . . .

*Jordan v. Court of Appeals for the Fourth Supreme Judicial District*, 701 S.W.2d 644, 646 (Tex. 1985) (quoting Tex. Rev. Civ. Stat. Ann. art. 4447d, § 3 (West 1976)).

Later, in *Irving* and *McCown*, the supreme court considered the scope of the predecessor to the peer review privilege, now codified in the Occupations Code, and its applicability to communications regarding the qualifications of a physician. Both *Irving* and *McCown* addressed a narrow set of facts in which the supreme court was asked to determine whether documents generated by a medical peer review committee in its initial credentialing process are subject to the peer review privilege. The court broadly applied the peer review privilege and held that "even a 'gratuitous' communication to a peer review committee about the qualifications of a physician or the quality of health care provided by that physician is within the scope of section 5.06 [now section 160.006 of the Occupations Code]." *Irving*, 927 S.W.2d at 19; *accord McCown*, 927 S.W.2d at 5.

In this case, Ebony Lake relies on only the peer review privilege. This privilege is associated with one discreet and specific type of medical committee—that which performs peer reviews. Although the peer review committee is encompassed by the more broadly defined "medical committee," the supreme court has held that the more specific sub-category of a medical peer review committee enjoys broad application of the peer review privilege. Accordingly, we consider only whether Ebony Lake has shown a probable right to recovery based on its assertion of a peer review privilege. Although the documents at issue were on pre-printed forms developed by the Department, reports were appended to those forms. The reports indicate the time and location of the occurrences, the nature of the occurrences, post-occurrence treatment, witnesses to the occurrences, and descriptions of the incidents. The documents also indicate that the actions of some of the facility's medical staff were investigated or reviewed. Moreover, Waggoner testified that the reports were processed by the quality assurance committee, and Ebony Lake produced a copy of the policy under

9

which the committee operates. Appellees presented no controverting evidence. Based on this evidence, we conclude that Ebony Lake has satisfied its burden for purposes of a temporary injunction. *Cf. In re Osteopathic Med. Ctr.*, 16 S.W.3d 881 (Tex. App.—Fort Worth 2000, orig. proceeding) (holding trial court abused its discretion in ordering production of report documenting occurrence at facility, patient's condition before occurrence, diagnosis of condition after occurrence, and care and treatment received until transport to hospital); *In re WHMC*, 996 S.W.2d 409 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) (holding trial court abused its discretion in ordering medical facility to produce documents even though witness averred that documents were generated for committee purpose of improving quality of patient care).

Ebony Lake has also demonstrated a showing of probable harm in the interim. A party proves irreparable harm by showing an injury for which there can be no real legal measure of damages or none that can be ascertained with a sufficient degree of certainty. *Thompson*, 24 S.W.3d at 577. Ebony Lake argues that disclosure of the reports prior to the trial on the merits would result in a noncompensable injury. We agree. It would be a hollow victory if, following a trial on the merits, the trial court were to determine that the reports were indeed privileged, but the reports had already been disclosed.

Relying on *In re Pack*, appellees counter that because Ebony Lake was required by law to disclose the reports to the Department, they have failed to demonstrate any injury. *Pack* was a mandamus action, in which the second court of appeals was called upon to decide whether nursing home investigation reports prepared by the Texas Department of Human Services, along with a nursing home's responsive plans of correction, and the testimony of the Department's surveyors

regarding their investigations, were excluded from discovery under the peer review privilege. 996 S.W.2d at 5. The nursing home argued that the records were prepared from confidential information collected from the nursing home's peer review committee, and that the Department was an agent of this committee when it prepared its reports. However, in that proceeding the nursing home did not segregate those documents that it claimed included confidential information for *in camera* inspection, as it was required to do. The court concluded that because the Department and the nursing home were required by law to make the documents at issue public, the documents were discoverable. *In re Pack*, 996 S.W.2d at 7. The court further held, "The mere fact that the Nursing Home's peer review committee may have reviewed the TDHS documents does not make them privileged." *Id.*

In this case, the nursing home did segregate the questionable documents for *in camera* inspection. Furthermore, the documents were not created by the Department, as was the case in *Pack*, but were created by the quality assurance committee. We need not decide at this juncture whether *In re Pack* applies to the facts of this case and renders the reports at issue subject to disclosure. The facts before us, however, are sufficiently distinguishable to establish a bona fide issue that should be addressed at a trial on the merits. And because Ebony Lake has shown clear evidence of irreparable injury, its certainty of victory need not be as stringently examined. *See Southwestern Bell Tel. Co. v. Public Util. Comm'n*, No. 3-01-114-CV, slip op. at 11 (Tex. App.—Austin July 26, 2001, no pet. h.) (quoting *Developments in the Law—Injunctions*, 78 Harv. L. Rev. 994, 1056 (1965)). As this Court has acknowledged, "Clear evidence of irreparable injury should result in a less stringent requirement of certainty of victory; greater certainty of victory should result in a less

11

stringent requirement of proof of irreparable injury." *Id.* In this case, the sliding scale measures in Ebony Lake's favor. Ebony Lake's first issue is sustained.

## CONCLUSION

We hold that the initial August 20 temporary injunction order was fatally defective and therefore void; accordingly, we overrule Ebony Lake's second issue. We conclude, however, that Ebony Lake established a probable right to recovery and a probable injury in the interim and thus satisfied the prerequisites for a temporary injunction. We therefore sustain its first issue and reverse the trial court's order denying the application for a temporary injunction, and remand the cause to the trial court for issuance of a temporary injunction or for further proceedings consistent with our opinion.

 

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Reversed and Remanded

Filed: November 29, 2001

Publish