TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-02-00615-CV




Capital Senior Management 1, Inc., Appellant



v.



Texas Department of Human Services, and the Attorney

General for the State of Texas, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. GN201333, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING




O P I N I O N



 This case involves the release of information under the Public Information Act
(PIA). Tex. Gov't Code Ann. §§ 552.002-.353 (West 2000 & Supp. 2004). Appellee, the Texas
Department of Human Services (Department), received a request to disclose the public
information it had about the appellant, Capital Senior Management 1, Inc. (Capital), a nursing
home operator. The Office of the Attorney General (OAG), at the Department's request,
reviewed a representative sampling of the documents and determined that some of them were
public documents under the PIA. Tex. Att'y Gen. ORD-2007 (2002). Capital asserted various
privileges and sued to enjoin their release. The trial court denied Capital's request for injunctive
relief and ordered the documents released. Capital 

now appeals, claiming the trial court abused its discretion in ordering the documents
released. (1) Because we find that those reports entitled "Facility Investigation Reports" and
"Facility Abuse/Neglect Investigation Reports," were used or developed by the Department in
an investigation of abuse or neglect and are nonpublic, we reverse the trial court's judgment
as to those documents, and remand this case to the trial court for further proceedings
consistent with this opinion. As to the remaining documents, we affirm the trial court's order
denying Capital injunctive relief.


FACTUAL AND PROCEDURAL BACKGROUND

 On February 4, 2002, the Department received a letter from Kevin O'Malley, a
Houston attorney, requesting information about Parkway Place nursing home, which is operated
by Capital. O'Malley requested documents compiled by the Department during its annual
surveys and licensing examinations, as well as documents compiled by the Department while
investigating complaints of abuse or neglect. (2) On February 7, 2002, the Department received a
letter from Capital's attorney declaring that the information was nonpublic. On February 12,
2002, the Department sent a representative sampling of the requested information to the OAG,
who concluded that the Department had to withhold from disclosure various surveys, personal
resident information, medical records, and "reports, records, and working papers used" by the
Department in an investigation of abuse or neglect. Id. The rest of the requested information
was considered public and subject to disclosure. Id. 

 On April 23, 2002, Capital sued to enjoin the Department from disclosing the
information. Capital claimed the information was protected from public release under one of the
various peer-review committee privileges or what it considered to be a "quality-of-care"
privilege. See Tex. Occ. Code Ann. §§ 151.002(a)(7), (8), 160.007 (medical peer-review
privilege), 303.001-.010 (West 2004) (nurse peer-review privilege); Tex. Health & Safety Code
Ann. §§ 161.031-.033 (West 2001 & Supp. 2004) (medical committee peer-review privilege),
242.001, .049 (West 2001 & Supp. 2004); 40 Tex. Admin. Code Ann. §§ 19.601, .1902, .1917,
.1923 (2003) (quality-of-care privilege). The trial court ordered the Department to release the
information finding that Capital failed to establish its right to permanent injunctive relief. (3) 


STANDARD OF REVIEW

 A party requesting injunctive relief must show the existence of a wrongful act,
imminent harm, irreparable injury, and the absence of an adequate remedy at law. Texas Health
Care Info. Council v. Seton Health Plan, Inc., 94 S.W.3d 841, 853 (Tex. App.--Austin 2002, no
pet.). Appellate review of a trial court order denying a permanent injunction is strictly limited to
a determination of whether the trial court had clearly abused its discretion. Envoy Med. Sys.,
L.L.C. v. State, 108 S.W.3d 333, 335 (Tex. App.--Austin 2003, no pet.). A trial court clearly
abuses its discretion when it misapplies the law to the facts. Ebony Lake Healthcare Ctr. v.
Texas Dep't of Human Servs., 62 S.W.3d 867, 871 (Tex. App.--Austin 2001, no pet.). 

 The PIA provides that the public is entitled to information "collected, assembled,
or maintained under a law or ordinance or in connection with the transaction of official business"
by or for a governmental body. Tex. Gov't Code Ann. §§ 552.002, .021 (West Supp. 2004). The
PIA excepts from public disclosure information made confidential by constitution, statute, or
judicial decision. Id. § 552.101 (West 1994). A court must liberally construe the PIA in favor of
granting a request for information and narrowly construe the PIA's exceptions. Envoy Med.
Sys.,108 S.W.3d at 335-36. The party seeking to withhold information from the public has the
burden to prove that an exception to disclosure applies to the information at issue. Id. Whether
the information is subject to disclosure under the PIA or excepted from disclosure is a question
of statutory construction, a question of law. Ebony Lake, 62 S.W.3d at 871.


DISCUSSION

 In order to be entitled to injunctive relief, Capital was first required to show the
existence of a wrongful act. The wrongful act Capital complains of is the trial court's order
authorizing the release of documents Capital believes are privileged or confidential by law. The
documents can be divided into two categories: (1) those generated by Capital and (2) those
generated by the Department. (4) 


Records generated by Capital

 The trial court held that the documents entitled "Facility Investigation Reports"
and "Facility Abuse/Neglect Investigation Reports" were public not privileged, pursuant to
sections 242.123(c) of the health and safety code and section 19.2010(a)(1) of title 40 of the
administrative code. Section 242.123 falls within Subchapter E, entitled "Reports of Abuse and
Neglect." Tex. Health & Safety Code Ann. §§ 242.121-.151 (West 2001 & Supp. 2004). 
Paragraph (c) states: "The phone number and address as well as the name of the person making
the report [of abuse or neglect under section 242.122 (5)] must be deleted from any type of report
that is released to the public, to the 

institution, or to an owner of agent of the institution." Id. § 242.123(c) (West 2001). Section
19.2010(a)(1) of title 40 of the administrative code states:



(a) Confidentiality. All reports, records, and working papers used or developed by
the Texas Department of Human Services (DHS) in an investigation are confidential and
may be released to the public only as provided below.


(1) Completed written investigation reports are open to the public, provided the report
is de-identified. . . . 


(2) If DHS receives written authorization from a facility resident or the resident's legal
representative regarding an investigation of abuse or neglect involving that
resident, DHS will release the complete investigation report without removing the
resident's name. . . . 



40 Tex. Admin. Code § 19.2010(1)(a) (2003). (6) 

 Neither section authorizes the release of these documents. Section
242.123(c) of the health and safety code simply protects the identity of the victim
and complainant when reports are released. Section 19.2010(a)(1) of title 40 of
the administrative code does not authorize the release of these documents, indeed
it prohibits their release: "[R]eports, records, and working papers used or
developed by the Texas Department of Human Services (DHS) in an investigation
are confidential." (7) Id. Neither of the exceptions that follow apply. Instead, the
exceptions cited refer to completed investigation reports, not those written reports
made pursuant to section 242.122 of the health and safety code, and the release of
the victim's name with consent.

 In Pack v. Crossroads, Inc., the court discussed the policy reasons
for withholding "reports, records, and working papers used or developed" by the
Department in an investigation of a complaint of abuse or neglect pursuant to
section 242.127. See 53 S.W.3d 492, 504-05 (Tex. App.--Fort Worth 2001, pet.
denied). At issue were the admissibility of photographs the Department used in
its investigation and whether those were either "reports, records [or] working
papers" within section 242.127 of the health and safety code. Id. at 499. The
court discussed the privacy interests that attach to documents used by the
Department when investigating a claim of abuse or neglect. Id. at 503. The
appellants claimed section 242.127 was enacted primarily to protect the identity of
the patient. Id. The court noted that while patient confidentiality was important,
section 242.127 was intended to protect the integrity of the investigatory process
as well. Id. at 505.

 In addition to protecting the privacy interest of the patient and the
integrity of the investigatory process, the prohibition against releasing "reports,
records, and working papers used" by the Department in investigating a complaint
of abuse or neglect also protects the identity of the complainant--whether a
family member, roommate, or a nursing home staff. We discussed the policy
behind protecting the identities of complainants in Texas Department of Human
Services v. Benson, 893 S.W.2d 236 (Tex. App.--Austin 1995, pet. denied), in a
similar context. While the dispute in that case arose under a confidentiality
provision of the family code, the provision was identical to section 242.127 of the
health and safety code. We concluded that "reports, records, and working papers
used or developed in an investigation" of child abuse or neglect were confidential. 
See id. at 240-41 (citing Act of June 16, 1989, 71st Leg., R.S., ch. 1231, 1989
Tex. Gen. Laws 4957, repealed by Act of April 20, 1995, 74th Leg., R.S., ch. 20,
1995 Tex. Gen. Laws 282). We said the release of information used by the
Department during its ongoing investigation of child abuse might discourage
reporting and encourage retaliation. Id. at 242. 

 Those policy concerns apply here as well. While the names of
complainants, witnesses and victims must be deleted from completed
investigation reports, releasing these documents during the investigatory phase
might enable one to identify the complainant. The prohibition against the release
of original reports of abuse or neglect also serves to protect the nursing home in
the event the report is unsubstantiated. The Department is prohibited from
releasing incomplete investigatory reports. See Tex. Gov't Code Ann. §
242.126(g) (West Supp. 2004), 40 Tex. Admin. Code §§ 19.2010(a)(1), .2011(e). 
The Texas Legislature, in these statutes dealing with nursing home matters and
operations, has permitted some confidentiality with regard to the investigation of
complaints received while making the results of the investigations public. The
primary purposes of the exemption are to protect the privacy of confidential
informants and facilitate governmental access to investigatory material which
might not be available absent a promise of confidentiality. 

 We conclude, then, that those documents entitled "Facility
Investigation Reports" and "Facility Abuse/Neglect Investigation Reports" set out
in category 3 are nonpublic and must remain so. Capital met its burden to
establish that these reports were excepted from disclosure pursuant to section
552.101 of the government code. (8) 


Records generated by the Department

 The remainder of the documents Capital sought to withhold from
disclosure were those generated by the Department. (9) Capital argues that the
remaining documents generated by the Department pursuant to its regulatory
authority over Texas nursing homes are nonpublic. According to Capital, the
legislature envisioned a system whereby the nursing home would empanel one or
more various committees--a medical peer-review committee, a nurse peer-review
committee or a medical committee peer-review committee--to monitor the
nursing homes quality of care. In effect, Capital contends nursing homes should
be self-regulating.

 At trial, Capital testified that all the documents generated by the
Department fell within one of the various peer-review privileges because "[a]ll the
reports that come down, 2567's and other correspondence, go through the
committees." "Incident reports, [for example]" appellant continued, "are data-gathering instruments of the committee." Capital relied on Humana Hospital
Corp. v. Spears-Peterson, 867 S.W.2d 858 (Tex. App.--San Antonio 1993, no
writ), for the proposition that the Department was an extension of Capital's peer-review committees because the Department's work fell within the committees'
quality-of-care oversight function or because Department investigators, who were
nurses, were members of appellant's nurse peer-review committee. Capital called these Department investigators "the Department representatives from
Parkway." 

 Humana Hospital is inapplicable because Department representatives are not
agents of the nursing home and are not for hire. In that case, the court held that the work product
of a private, independent, non-governmental, national credentialing commission hired by a
hospital to conduct an independent, non-governmental credentialing investigation of the hospital
constituted the work product of a medical peer committee. Id. at 861-62. We find the analogy
between a private, independent, non-governmental credentialing body like that at issue in
Humana and a public, independent, governmental entity authorized by law to administer state
welfare functions off-base.

 Capital argues that when the legislature put peer-review committees in charge of a
facility's quality of care and made their deliberations confidential, it intended to subordinate the
PIA and other disclosure statutes. Capital claims that "[t]hese statutes [Tex. Occ. Code Ann. §§
151.002, 160.005-.007] provide an unyielding grant of confidentiality and privilege to the
processes of peer review committees." Capital argues this bias in favor of confidentiality has
been "judicially interpreted to fully secure the process," and cautions us against limiting that
"unyielding grant of confidentiality and privilege." In support of this argument, Capital quotes
Irving Healthcare System v. Brooks, 927 S.W.2d 12, 15-16 (Tex. 1996):



The Legislature recognized the chilling effect that would be engendered by enfeebling
confidentiality. . . .


We agree that, "[o]nce a state has made the policy decision to afford privileged status for certain
records, the Legislature and the courts should not undermine the policy objective by
circumventing or weakening the privileged status with exceptions not mandated by constitutional
considerations or the long-term interests of justice. Nothing is worse than a half-hearted
privilege; it becomes a game of semantics that leaves parties twisting in the wind while lawyers
determine its scope."



(quoting Charles David Creech, The Medical Review Committee Privilege: A
Jurisdictional Survey, 67 N.C.L. Rev. 179, 179-80 (1988)). 

 Capital fails to realize that Texas courts have not carved out new
exceptions to the peer-review committee privilege but have simply applied the
peer-review privilege to prevent what Capital now attempts to do--namely, cloak
public information in confidentiality by first filtering it through the peer-review
process. In Irving, the court limited the privilege to those documents created by
the committee itself. Id. at 15. Texas courts have consistently limited the peer-review committee privileges to those documents generated by the committee as a
result of the committee's deliberative processes and to those submitted to the
committee at their direction and in furtherance of committee business. See
Memorial Hosp.--The Woodlands v. McCown, 927 S.W.2d 1, 9 (Tex. 1996);
Barnes v. Whittington, 751 S.W.2d 493, 496 (Tex. 1988); Jordan v. Court of
Appeals, 701 S.W.2d 644, 647-48 (Tex. 1985); Texarkana Mem'l Hosp., Inc. v.
Jones, 551 S.W.2d 33, 34-36 (Tex. 1977); Ebony Lake, 62 S.W.3d at 869; see
also Creech, supra at 184 (noting that the privilege is limited to what the
committee produces). Just because a report may deal with a nursing home's
quality of care and has been reviewed by a peer-review committee does not
necessarily mean that the report is cloaked with a committee privilege. 

 We have reviewed the documents and considered the record and
agree with the trial court's legal conclusions on the documents created by the
Department. We find that none of the disputed documents come within any of the
privileges cited by Capital. Chapter 242 of the health and safety code and the
rules set out in title 40 of the administrative code make all inspection, survey or
investigation reports public either through the nursing home or through the
Department. See Tex. Health & Safety Code Ann. §§ 242.042(a), (b) (requiring
nursing homes to post notice that its licensing inspection reports, deficiency
reports and compliance history are available for public viewing), .043(a), (h)
(West 2001) (making inspection, survey or investigation reports available to
consumers through the Department), .126(g) (requiring the Department to make
public its investigation reports of abuse or neglect occurring at the nursing home);
40 Tex. Admin. Code §§ 19.1921(e) (requiring a nursing home to post in an area
accessible to residents and guests information dealing with inspections, violations,
and license suspensions), .1921(h) (requiring a nursing facility to make available
to the public "licensing inspection reports, deficiency sheets, and plans of
correction"), .1921(j) (requiring the Department to make available "inspection
reports and related reports" to the public), .2010(a) (making "all reports, records,
and working papers used or developed" by the Department public), .2011(e)
(records maintained by the Department). In addition, federal law requires a
nursing facility to make survey information public. 42 U.S.C.A. § 1396r(g) (West
2003) (disclosure of results of inspections and activities); 42 C.F.R. §§ 431.115
(2003) (disclosure of survey information), 483.10 (2003) (posting survey reports),
488.325 (2003) (disclosure of survey reports). We reject Capital's argument that
these documents, which were created by either the state or the federal government,
were based upon the reports or proceedings of a peer-review committee. No
document appears to have been generated by or for a peer-review committee. 
These documents were generated by the Department and not a peer-review
committee. They deal with reports of abuse and neglect and the nursing home's
follow-up and were not the product of a committee's deliberative process. 
Therefore, the documents are not privileged and are subject to disclosure.

 Further, Capital's argument that publication of quality-of-care
information would hinder the free and open "interchange" of information within
health-care entities is without merit. The overarching policy for making
confidential the deliberations of peer-review committees does not apply to these
documents that were not the product of any deliberative process. While it is the
policy of this State to encourage health care facilities to engage in uninhibited
discussions about the quality of the medical care they provide, free from public
purview, Texarkana Memorial Hospital, 551 S.W.2d at 34-36, it is also the policy
of this state to ensure that facilities disclose information dealing with neglect and
abuse, Tex. Health & Safety Code Ann. §§ 42.121-.135; 40 Tex. Admin. Code §
19.2011 (2001); see also Irving, 927 S.W.2d at 16 (discussing competing policy
considerations that go into determining whether information is public or
nonpublic); Jordan, 701 S.W.2d at 647 (same). In fact, it is in the public's best
interest to have access to information concerning the operation of nursing homes. 
See Tex. Health & Safety Code Ann. § 242.001(d)(4) (West 2001).

Finally, to the extent Capital seeks to establish that the release of the disputed
documents would release private, patient information, we note that the names and
other information that might identify any patient have been redacted.

CONCLUSION

 We find that those documents entitled "Facility Investigation
Reports"and "Facility Abuse/Neglect Investigation Reports" are confidential
pursuant to section 242.127 of the health and safety code and these are excepted
from disclosure under section 552.101 of the government code. We conclude that
the trial court abused its discretion in denying Capital injunctive relief as to those
documents. We therefore reverse the trial court's judgment as to these documents
and remand the cause to the trial court for issuance of the injunction or for further
proceedings consistent with our opinion. We affirm the trial court's judgment
denying injunctive relief as to all other documents. Our order staying enforcement
of the trial court's order to release the documents will be set aside after a period of
fifteen days from the date of this opinion; if a motion for rehearing is timely filed,
the stay order shall be set aside fifteen days after the ruling on the motion for
rehearing.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed: March 11, 2004
1. In conjunction with its appeal, Capital also filed in this Court a motion requesting an
emergency order staying enforcement of the trial court's order to release the documents. On
October 7, 2002, we granted Capital's motion and stayed the trial court's order pending
resolution of Capital's appeal. 
2. The Texas Department of Human Services regulates nursing homes in Texas. Tex. Health &
Safety Code Ann. §§ 242.001-.852 (West 2001 & Supp. 2004).
3. The trial court's final judgment conflicted with its findings of fact and conclusions of law. The
trial court granted the OAG's plea to the jurisdiction but followed with findings of fact and
conclusions of law in which it stated it had jurisdiction pursuant to section 552.325 of the
government code. See Tex. Gov't Code Ann. § 552.325 (West Supp. 2004). Findings of fact
and conclusions of law filed after a judgment are controlling if they conflict with a previous
judgment. Dickerson v. DeBarbieris, 964 S.W.2d 680, 684 (Tex. App.--Houston [14th Dist.] 1998, no pet.). The
trial court had jurisdiction to prevent the disclosure of privileged or confidential information pursuant to those
statutes which make the information privileged or confidential. See Tex. Occ. Code Ann. §§ 160.005 (making report
of medical peer-review committee confidential and not subject to disclosure), 303.006 (West 2004) (making report
of nursing peer-review committee confidential); Tex. Health & Safety Code Ann. §§ 161.031 (making report of
medical committee confidential), 242.501(a)(7) (making information about nursing home patient confidential),
242.049 (West Supp. 2004) (making report about nursing home's quality of care confidential).
4. For purposes of this appeal, we have divided the documents into two categories. At trial, the
documents were categorized as follows: Category 1: the representative sampling sent to the OAG
for review; Category 2: Incident/Complaint Intake & Authorization for Investigation Forms;
Category 3: Facility Investigation Reports; Category 4: Contact Reports; Category 5:
Investigative Narratives; Category 6a: Licensing Violations; Category 6b: Deficiency Statements;
Category 6c: Revisit Reports; Category 6d: Administrative Penalties; Category 7: Fire Safety
Surveys; Category 8: Licensing Inspection Reports; and Category 9: OSCAR [Online Survey
Certification & Reporting] Reports. We will reference the trial court's categorization only to the
extent necessary to clarify our holding. 
5. All nursing home staff are required to report suspected cases of patient abuse or neglect. Tex.
Health & Safety Code Ann. § 242.122(c) (West 2001).
6. Section 19.2010(a) of title 40 of the administrative code mirrors section 242.127 of the health
and safety code, which states that "[a] report, record, or working paper used or developed in an
investigation made under this subchapter [Subchapter E Reports of Abuse or Neglect] and the
name, address, and phone number of any person making a report under this subchapter are
confidential and may be disclosed only for purposes consistent with the rules adopted by the
board [of human services] or the designated agency." See Tex. Health & Safety Code Ann. § 242.127
(West Supp. 2004). 
7. The record indicates that the documents entitled "Facility Investigation Reports" and "Facility Abuse/Neglect Investigation Reports" were developed by the
Department to facilitate the written reports required by section 242.122 of the health and safety code. See Tex. Health & Safety Code Ann. § 242.122(c).
8. Our holding is supported by the letter ruling issued by the OAG in this case and others. In this
case, the Department requested the OAG to review the disputed documents and advise it which
could be released. See Tex. Gov't Code Ann. § 402.043 (West 1998) (authorizing the OAG to
"issue a written opinion on a question affecting the public interest or concerning the official
duties of the requesting person."). The representative sampling the Department sent to the OAG
was divided into two categories: (1) "normally release" information and (2) "not release"
information. See Tex. Att'y Gen. ORD-2007 (2002). The OAG stated that within the "not release" information
were "'reports, records, or working papers used or developed in an investigation' of Parkway Place." Id. The OAG
said those documents were nonpublic. Id. In another letter ruling on similar facts, the OAG determined that reports
entitled "Facility Investigation Reports" fell within the prohibitions of section 242.127 of the health and safety code
and were nonpublic. Tex. Att'y Gen. ORD-2538 (2000). It is difficult to tell why, if the OAG instructed the
Department to withhold the "reports, records, and working papers used" by the Department in making an
investigation of abuse or neglect and has consistently said as much, these documents entitled "Facility Investigation
Reports" and "Facility Abuse/Neglect Investigation Reports," which were admittedly made by Capital pursuant to its
statutory duty to report complaints of abuse or neglect, were ordered released. One explanation might be that the
OAG did not notice these reports because there were so few of them, five, and because they were placed within the
"normally release" documents. Nonetheless, the Department acknowledges that these reports were made pursuant to
section 242.122 of the health and safety code by Capital and they were complaints of abuse or neglect. They fall
within the prohibition of section 242.127 of the health and safety code and within the OAG's letter ruling. 
9. The remaining documents are: Category 2: Incident/Complaint Intake & Authorization for
Investigation Forms; Category 4: Contact Reports; Category 5: Investigative Narratives; Category
6a: Licensing Violations; Category 6b: Deficiency Statements; Category 6c: Revisit Reports;
Category 6d: Administrative Penalties; Category 7: Fire Safety Surveys; Category 8: Licensing
Inspection Reports; and Category 9: OSCAR [Online Survey Certification & Reporting] Reports. 
Category 1, the representative sampling sent to the OAG for review, is not at issue.