# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-02-00615-CV

---

**Capital Senior Management 1, Inc., Appellant**

**v.**

**Texas Department of Human Services, and the Attorney
General for the State of Texas, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. GN201333, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

## O P I N I O N

This case involves the release of information under the Public Information Act (PIA). Tex. Gov=t Code Ann. '' 552.002-.353 (West 2000 & Supp. 2004). Appellee, the Texas Department of Human Services (Department), received a request to disclose the public information it had about the appellant, Capital Senior Management 1, Inc. (Capital), a nursing home operator. The Office of the Attorney General (OAG), at the Department=s request, reviewed a representative sampling of the documents and determined that some of them were public documents under the PIA. Tex. Att=y Gen. ORD-2007 (2002). Capital asserted various privileges and sued to enjoin their release. The trial court

denied Capital=s request for injunctive relief and ordered the documents released. Capital now appeals,

claiming the trial court abused its discretion in ordering the documents released.[1] Because we find that those

reports entitled AFacility Investigation Reports@ and AFacility Abuse/Neglect Investigation Reports,@ were

used or developed by the Department in an investigation of abuse or neglect and are nonpublic, we reverse

the trial court=s judgment as to those documents, and remand this case to the trial court for further

proceedings consistent with this opinion. As to the remaining documents, we affirm the trial court=s order

denying Capital injunctive relief.

**FACTUAL AND PROCEDURAL BACKGROUND**

---

[1] In conjunction with its appeal, Capital also filed in this Court a motion requesting an emergency order staying enforcement of the trial court=s order to release the documents. On October 7, 2002, we granted Capital=s motion and stayed the trial court=s order pending resolution of Capital=s appeal.

On February 4, 2002, the Department received a letter from Kevin O=Malley, a Houston attorney, requesting information about Parkway Place nursing home, which is operated by Capital. O=Malley requested documents compiled by the Department during its annual surveys and licensing examinations, as well as documents compiled by the Department while investigating complaints of abuse or neglect.[2] On February 7, 2002, the Department received a letter from Capital=s attorney declaring that the information was nonpublic. On February 12, 2002, the Department sent a representative sampling of the requested information to the OAG, who concluded that the Department had to withhold from disclosure various surveys, personal resident information, medical records, and Areports, records, and working papers used@ by the Department in an investigation of abuse or neglect. *Id.* The rest of the requested information was considered public and subject to disclosure. *Id.*

---

[2] The Texas Department of Human Services regulates nursing homes in Texas. Tex. Health & Safety Code Ann. '' 242.001-.852 (West 2001 & Supp. 2004).

On April 23, 2002, Capital sued to enjoin the Department from disclosing the information. Capital claimed the information was protected from public release under one of the various peer-review committee privileges or what it considered to be a "quality-of-care" privilege. *See* Tex. Occ. Code Ann. '' 151.002(a)(7), (8), 160.007 (medical peer-review privilege), 303.001-.010 (West 2004) (nurse peer-review privilege); Tex. Health & Safety Code Ann. '' 161.031-.033 (West 2001 & Supp. 2004) (medical committee peer-review privilege), 242.001, .049 (West 2001 & Supp. 2004); 40 Tex. Admin. Code Ann. '' 19.601, .1902, .1917, .1923 (2003) (quality-of-care privilege). The trial court ordered the Department to release the information finding that Capital failed to establish its right to permanent injunctive relief.[3]

---

[3] The trial court=s final judgment conflicted with its findings of fact and conclusions of law. The trial court granted the OAG=s plea to the jurisdiction but followed with findings of fact and conclusions of law in which it stated it had jurisdiction pursuant to section 552.325 of the government code. *See* Tex. Gov=t Code Ann. ' 552.325 (West Supp. 2004). Findings of fact and conclusions of law filed after a judgment are controlling if they conflict with a previous judgment. *Dickerson v. DeBarbieris*, 964 S.W.2d 680, 684 (Tex. App.CHouston [14th Dist.] 1998, no pet.). The trial court had jurisdiction to prevent the disclosure of privileged or confidential information pursuant to those statutes which make the information privileged or confidential. *See* Tex. Occ. Code Ann. '' 160.005 (making report of medical peer-review committee confidential and not subject to disclosure), 303.006 (West 2004) (making report of nursing peer-review committee confidential); Tex. Health & Safety Code Ann. '' 161.031 (making report of medical committee confidential), 242.501(a)(7) (making information about nursing home patient confidential), 242.049 (West

**STANDARD OF REVIEW**

A party requesting injunctive relief must show the existence of a wrongful act, imminent harm, irreparable injury, and the absence of an adequate remedy at law. *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 853 (Tex. App.CAustin 2002, no pet.). Appellate review of a trial court order denying a permanent injunction is strictly limited to a determination of whether the trial court had clearly abused its discretion. *Envoy Med. Sys., L.L.C. v. State*, 108 S.W.3d 333, 335 (Tex. App.CAustin 2003, no pet.). A trial court clearly abuses its discretion when it misapplies the law to the facts. *Ebony Lake Healthcare Ctr. v. Texas Dep=t of Human Servs.*, 62 S.W.3d 867, 871 (Tex. App.CAustin 2001, no pet.).

The PIA provides that the public is entitled to information Acollected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business@ by or for a governmental body. Tex. Gov=t Code Ann. '' 552.002, .021 (West Supp. 2004). The PIA excepts from public disclosure information made confidential by constitution, statute, or judicial decision. *Id*. ' 552.101 (West 1994). A court must liberally construe the PIA in favor of granting a request for information and narrowly construe the PIA=s exceptions. *Envoy Med. Sys.*,108 S.W.3d at 335-36. The party seeking to withhold information from the public has the burden to prove that an exception to disclosure applies to the information at issue. *Id*. Whether the information is subject to disclosure under the PIA or excepted from disclosure is a question of statutory construction, a question of law. *Ebony Lake*, 62 S.W.3d at 871.

**DISCUSSION**

In order to be entitled to injunctive relief, Capital was first required to show the existence of a wrongful act. The wrongful act Capital complains of is the trial court=s order authorizing the release of documents Capital believes are privileged or confidential by law. The documents can be divided into two categories: (1) those generated by Capital and (2) those generated by the Department.[4]

***Records generated by Capital***

---

[4] For purposes of this appeal, we have divided the documents into two categories. At trial, the documents were categorized as follows: Category 1: the representative sampling sent to the OAG for review; Category 2: Incident/Complaint Intake & Authorization for Investigation Forms; Category 3: Facility Investigation Reports; Category 4: Contact Reports; Category 5: Investigative Narratives; Category 6a: Licensing Violations; Category 6b: Deficiency Statements; Category 6c: Revisit Reports; Category 6d: Administrative Penalties; Category 7: Fire Safety Surveys; Category 8: Licensing Inspection Reports; and Category 9: OSCAR [Online Survey Certification & Reporting] Reports. We will reference the trial court=s categorization only to the extent necessary to clarify our holding.

The trial court held that the documents entitled AFacility Investigation Reports@ and AFacility Abuse/Neglect Investigation Reports@ were public not privileged, pursuant to sections 242.123(c) of the health and safety code and section 19.2010(a)(1) of title 40 of the administrative code. Section 242.123 falls within Subchapter E, entitled AReports of Abuse and Neglect.@ Tex. Health & Safety Code Ann. '' 242.121-.151 (West 2001 & Supp. 2004). Paragraph (c) states: AThe phone number and address as well as the name of the person making the report [of abuse or neglect under section 242.122[5]] must be deleted from any type of report that is released to the public, to the institution, or to an owner of agent of the institution.@ *Id*. ' 242.123(c) (West 2001). Section 19.2010(a)(1) of title 40 of the administrative code states:

(a) Confidentiality. All reports, records, and working papers used or developed by the Texas Department of Human Services (DHS) in an investigation are confidential and may be released to the public only as provided below.

    (1) Completed written investigation reports are open to the public, provided the report is de-identified. . . .

    (2) If DHS receives written authorization from a facility resident or the resident=s legal representative regarding an investigation of abuse or neglect involving that resident, DHS will release the complete investigation report without removing the resident=s name. . . .

40 Tex. Admin. Code ' 19.2010(1)(a) (2003).[6]

---

[5] All nursing home staff are required to report suspected cases of patient abuse or neglect. Tex. Health & Safety Code Ann. ' 242.122(c) (West 2001).

[6] Section 19.2010(a) of title 40 of the administrative code mirrors section 242.127 of the health and safety code, which states that A[a] report, record, or working paper used or developed in an

8

investigation made under this subchapter [Subchapter E Reports of Abuse or Neglect] and the name, address, and phone number of any person making a report under this subchapter are confidential and may be disclosed only for purposes consistent with the rules adopted by the board [of human services] or the designated agency.@ *See* Tex. Health & Safety Code Ann. ' 242.127 (West Supp. 2004).

Neither section authorizes the release of these documents. Section 242.123(c) of the health and safety code simply protects the identity of the victim and complainant when reports are released. Section 19.2010(a)(1) of title 40 of the administrative code does not authorize the release of these documents, indeed it prohibits their release: A[R]eports, records, and working papers used or developed by the Texas Department of Human Services (DHS) in an investigation are confidential.@[7] *Id*. Neither of the exceptions that follow apply. Instead, the exceptions cited refer to *completed investigation reports*, not those written reports made pursuant to section 242.122 of the health and safety code, and the release of the victim=s name with consent.

In *Pack v. Crossroads, Inc.*, the court discussed the policy reasons for withholding Areports, records, and working papers used or developed@ by the Department in an investigation of a complaint of abuse or neglect pursuant to section 242.127. *See* 53 S.W.3d 492, 504-05 (Tex. App.CFort Worth 2001, pet. denied). At issue were the admissibility of photographs the Department used in its investigation and whether those were either Areports, records [or] working papers@ within section 242.127 of the health and safety code. *Id*. at 499. The court discussed the privacy interests that attach to documents used by the Department when investigating a claim of abuse or neglect. *Id*. at 503. The

---

[7] The record indicates that the documents entitled AFacility Investigation Reports@ and AFacility Abuse/Neglect Investigation Reports@ were developed by the Department to facilitate the written reports required by section 242.122 of the health and safety code. *See* Tex. Health & Safety Code Ann. ' 242.122(c).

10

appellants claimed section 242.127 was enacted primarily to protect the identity of the patient. *Id*. The court noted that while patient confidentiality was important, section 242.127 was intended to protect the integrity of the investigatory process as well. *Id*. at 505.

In addition to protecting the privacy interest of the patient and the integrity of the investigatory process, the prohibition against releasing Areports, records, and working papers used@ by the Department in investigating a complaint of abuse or neglect also protects the identity of the complainantC whether a family member, roommate, or a nursing home staff. We discussed the policy behind protecting the identities of complainants in *Texas Department of Human Services v. Benson*, 893 S.W.2d 236 (Tex. App.C Austin 1995, pet. denied), in a similar context. While the dispute in that case arose under a confidentiality provision of the family code, the provision was identical to section 242.127 of the health and safety code. We concluded that Areports, records, and working papers used or developed in an investigation@ of child abuse or neglect were confidential. *See id*. at 240-41 (citing Act of June 16, 1989, 71st Leg., R.S., ch. 1231, 1989 Tex. Gen. Laws 4957, *repealed by* Act of April 20, 1995, 74th Leg., R.S., ch. 20, 1995 Tex. Gen. Laws 282). We said the release of information used by the Department during its ongoing investigation of child abuse might discourage reporting and encourage retaliation. *Id*. at 242.

Those policy concerns apply here as well. While the names of complainants, witnesses and victims must be deleted from completed investigation reports, releasing these documents during the investigatory phase might enable one to identify the complainant. The prohibition against the release of original reports of abuse or neglect also serves to protect the nursing home in the event the report is

11

unsubstantiated. The Department is prohibited from releasing incomplete investigatory reports. *See* Tex.

Gov=t Code Ann. ' 242.126(g) (West Supp. 2004), 40 Tex. Admin. Code '' 19.2010(a)(1), .2011(e).

The Texas Legislature, in these statutes dealing with nursing home matters and operations, has permitted

some confidentiality with regard to the investigation of complaints received while making the results of the

investigations public. The primary purposes of the exemption are to protect the privacy of confidential

informants and facilitate governmental access to investigatory material which might not be available absent a

promise of confidentiality.

We conclude, then, that those documents entitled AFacility Investigation Reports@ and

AFacility Abuse/Neglect Investigation Reports@ set out in category 3 are nonpublic and must remain so.

Capital met its burden to establish that these reports were excepted from disclosure pursuant to section

552.101 of the government code.**[8]**

---

**[8]** Our holding is supported by the letter ruling issued by the OAG in this case and others. In this case, the Department requested the OAG to review the disputed documents and advise it which could be released. *See* Tex. Gov=t Code Ann. ' 402.043 (West 1998) (authorizing the OAG to Aissue a written opinion on a question affecting the public interest or concerning the official duties of the requesting person.@). The representative sampling the Department sent to the OAG was divided into two categories: (1) Anormally release@ information and (2) Anot release@ information. *See* Tex. Att=y Gen. ORD-2007 (2002). The OAG stated that within the Anot release@ information were A>reports, records, or working papers used or developed in an investigation= of Parkway Place.@ *Id*. The OAG said those documents were nonpublic. *Id*. In another letter ruling on similar facts, the OAG determined that reports entitled AFacility Investigation Reports@ fell within the prohibitions of section 242.127 of the health and safety code and were nonpublic. Tex. Att=y Gen. ORD-2538 (2000). It is difficult to tell why, if the OAG instructed the Department to withhold the Areports, records, and working papers used@ by the Department in making an investigation of abuse or neglect and has consistently said as much, these documents entitled AFacility Investigation Reports@ and AFacility Abuse/Neglect Investigation Reports,@ which were admittedly made by Capital pursuant to its statutory duty to report complaints of abuse or neglect, were ordered released. One explanation might be that the OAG did not notice these reports because there were so few of them, five, and because they were placed within the Anormally release@ documents. Nonetheless, the Department acknowledges that these

*Records generated by the Department*



---

reports were made pursuant to section 242.122 of the health and safety code by Capital and they were complaints of abuse or neglect.  They fall within the prohibition of section 242.127 of the health and safety code and within the OAG=s letter ruling.

The remainder of the documents Capital sought to withhold from disclosure were those generated by the Department.[9] Capital argues that the remaining documents generated by the Department pursuant to its regulatory authority over Texas nursing homes are nonpublic. According to Capital, the legislature envisioned a system whereby the nursing home would empanel one or more various committees—a medical peer-review committee, a nurse peer-review committee or a medical committee peer-review committee—to monitor the nursing homes quality of care. In effect, Capital contends nursing homes should be self-regulating.

At trial, Capital testified that all the documents generated by the Department fell within one of the various peer-review privileges because "[a]ll the reports that come down, 2567=s and other correspondence, go through the committees." "Incident reports, [for example]" appellant continued, "are data-gathering instruments of the committee." Capital relied on *Humana Hospital Corp. v. Spears-Peterson*, 867 S.W.2d 858 (Tex. App.—San Antonio 1993, no writ), for the proposition that the Department was an extension of Capital=s peer-review committees because the Department=s work fell

_____

[9] The remaining documents are: Category 2: Incident/Complaint Intake & Authorization for Investigation Forms; Category 4: Contact Reports; Category 5: Investigative Narratives; Category 6a: Licensing Violations; Category 6b: Deficiency Statements; Category 6c: Revisit Reports; Category 6d: Administrative Penalties; Category 7: Fire Safety Surveys; Category 8: Licensing Inspection Reports; and Category 9: OSCAR [Online Survey Certification & Reporting] Reports. Category 1, the representative sampling sent to the OAG for review, is not at issue.

14

within the committees= quality-of-care oversight function or because Department investigators, who were nurses, were members of appellant=s nurse peer-review committee. Capital called these Department investigators Athe Department representatives from Parkway.@

*Humana Hospital* is inapplicable because Department representatives are not agents of the nursing home and are not for hire. In that case, the court held that the work product of a private, independent, non-governmental, national credentialing commission hired by a hospital to conduct an independent, non-governmental credentialing investigation of the hospital constituted the work product of a medical peer committee. *Id*. at 861-62. We find the analogy between a private, independent, non-governmental credentialing body like that at issue in *Humana* and a public, independent, governmental entity authorized by law to administer state welfare functions off-base.

Capital argues that when the legislature put peer-review committees in charge of a facility=s quality of care and made their deliberations confidential, it intended to subordinate the PIA and other disclosure statutes. Capital claims that A[t]hese statutes [Tex. Occ. Code Ann. '' 151.002, 160.005B.007] provide an unyielding grant of confidentiality and privilege to the processes of peer review committees.@ Capital argues this bias in favor of confidentiality has been Ajudicially interpreted to fully secure the process,@ and cautions us against limiting that Aunyielding grant of confidentiality and privilege.@ In support of this argument, Capital quotes *Irving Healthcare System v. Brooks*, 927 S.W.2d 12, 15-16 (Tex. 1996):

> The Legislature recognized the chilling effect that would be engendered by enfeebling confidentiality. . . .

15

We agree that, A[o]nce a state has made the policy decision to afford privileged status for certain records, the Legislature and the courts should not undermine the policy objective by circumventing or weakening the privileged status with exceptions not mandated by constitutional considerations or the long-term interests of justice. Nothing is worse than a half-hearted privilege; it becomes a game of semantics that leaves parties twisting in the wind while lawyers determine its scope.@

(quoting Charles David Creech, *The Medical Review Committee Privilege: A Jurisdictional Survey*, 67 N.C.L. Rev. 179, 179-80 (1988)).

Capital fails to realize that Texas courts have not carved out new exceptions to the peer-review committee privilege but have simply applied the peer-review privilege to prevent what Capital now attempts to doCnamely, cloak public information in confidentiality by first filtering it through the peer-review process. In *Irving*, the court limited the privilege to those documents created by the committee itself. *Id*. at 15. Texas courts have consistently limited the peer-review committee privileges to those documents generated by the committee as a result of the committee=s deliberative processes and to those submitted to the committee at their direction and in furtherance of committee business. *See Memorial Hosp.CThe Woodlands v. McCown*, 927 S.W.2d 1, 9 (Tex. 1996); *Barnes v. Whittington*, 751 S.W.2d 493, 496 (Tex. 1988); *Jordan v. Court of Appeals*, 701 S.W.2d 644, 647-48 (Tex. 1985); *Texarkana Mem=l Hosp., Inc. v. Jones*, 551 S.W.2d 33, 34-36 (Tex. 1977); *Ebony Lake*, 62 S.W.3d at 869; *see also* Creech, *supra* at 184 (noting that the privilege is limited to what the committee produces). Just because a report may deal with a nursing home=s quality of care and has been reviewed by a peer-review committee does not necessarily mean that the report is cloaked with a committee privilege.

16

We have reviewed the documents and considered the record and agree with the trial court=s legal conclusions on the documents created by the Department. We find that none of the disputed documents come within any of the privileges cited by Capital. Chapter 242 of the health and safety code and the rules set out in title 40 of the administrative code make all inspection, survey or investigation reports public either through the nursing home or through the Department. *See* Tex. Health & Safety Code Ann. '' 242.042(a), (b) (requiring nursing homes to post notice that its licensing inspection reports, deficiency reports and compliance history are available for public viewing), .043(a), (h) (West 2001) (making inspection, survey or investigation reports available to consumers through the Department), .126(g) (requiring the Department to make public its investigation reports of abuse or neglect occurring at the nursing home); 40 Tex. Admin. Code '' 19.1921(e) (requiring a nursing home to post in an area accessible to residents and guests information dealing with inspections, violations, and license suspensions), .1921(h) (requiring a nursing facility to make available to the public Alicensing inspection reports, deficiency sheets, and plans of correction@), .1921(j) (requiring the Department to make available Ainspection reports and related reports@ to the public), .2010(a) (making Aall reports, records, and working papers used or developed@ by the Department public), .2011(e) (records maintained by the Department). In addition, federal law requires a nursing facility to make survey information public. 42 U.S.C.A. ' 1396r(g) (West 2003) (disclosure of results of inspections and activities); 42 C.F.R. '' 431.115 (2003) (disclosure of survey information), 483.10 (2003) (posting survey reports), 488.325 (2003) (disclosure of survey reports). We reject Capital=s argument that these documents, which were created by either the state or the federal government, were based upon the reports or proceedings of a peer-review committee. No

17

document appears to have been generated by or for a peer-review committee. These documents were generated by the Department and not a peer-review committee. They deal with reports of abuse and neglect and the nursing home=s follow-up and were not the product of a committee=s deliberative process. Therefore, the documents are not privileged and are subject to disclosure.

Further, Capital=s argument that publication of quality-of-care information would hinder the free and open Ainterchange@ of information within health-care entities is without merit. The overarching policy for making confidential the deliberations of peer-review committees does not apply to these documents that were not the product of any deliberative process. While it is the policy of this State to encourage health care facilities to engage in uninhibited discussions about the quality of the medical care they provide, free from public purview, *Texarkana Memorial Hospital*, 551 S.W.2d at 34-36, it is also the policy of this state to ensure that facilities disclose information dealing with neglect and abuse, Tex. Health & Safety Code Ann. '' 42.121-.135; 40 Tex. Admin. Code ' 19.2011 (2001); *see also Irving*, 927 S.W.2d at 16 (discussing competing policy considerations that go into determining whether information is public or nonpublic); *Jordan*, 701 S.W.2d at 647 (same). In fact, it is in the public=s best interest to have access to information concerning the operation of nursing homes. *See* Tex. Health & Safety Code Ann. ' 242.001(d)(4) (West 2001).

Finally, to the extent Capital seeks to establish that the release of the disputed documents would release private, patient information, we note that the names and other information that might identify any patient have been redacted.

## CONCLUSION

18

We find that those documents entitled AFacility Investigation Reports@and AFacility Abuse/Neglect Investigation Reports@are confidential pursuant to section 242.127 of the health and safety code and these are excepted from disclosure under section 552.101 of the government code. We conclude that the trial court abused its discretion in denying Capital injunctive relief as to those documents. We therefore reverse the trial court=s judgment as to these documents and remand the cause to the trial court for issuance of the injunction or for further proceedings consistent with our opinion. We affirm the trial court=s judgment denying injunctive relief as to all other documents. Our order staying enforcement of the trial court=s order to release the documents will be set aside after a period of fifteen days from the date of this opinion; if a motion for rehearing is timely filed, the stay order shall be set aside fifteen days after the ruling on the motion for rehearing.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed:   March 11, 2004

19