**In the Interest of R.J.P., a Child.**

No. 14–04–00521–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 25, 2005.

Rhonda Amkraut Pressley, Austin, for appellant.

Anita Denise Paul Williams, Shawn Russel Casey, Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## PLURALITY OPINION

JOHN S. ANDERSON, Justice.

The Attorney General of Texas appeals the trial court's order modifying a prior order of child support that decreases the monthly child support obligation owed by appellee, Roosevelt P., from $420 to zero. The Attorney General contends the trial court erred by admitting into evidence and considering paternity results when it modified Roosevelt's child support obligation because: (1) collateral estoppel and res judicata barred the issue of paternity from being relitigated; (2) the Uniform Parentage Act precluded Roosevelt from rebutting his presumption of paternity; and (3) the paternity results failed to meet the admissibility requirements of the Texas Family Code. We reverse and remand.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Roosevelt married Anita in June of 1988, and they lived together as husband and wife until they separated on March 12, 1991. On July 16, 1991, four months after their separation, Anita gave birth to R.J.P. Anita and Roosevelt remained separated

without court ordered child support until 1998. In April of 1998, in cause number 98–14343, the trial court signed an agreed child support order finding Roosevelt to be R.J.P.'s biological father and ordering him to pay monthly support payments of $205.

In January of 2003, as a result of Roosevelt's increased earning capacity, the Attorney General, in cause number 98–14343, sought to modify Roosevelt's monthly child support obligation from $205 to $420. After receiving notice of the requested modification, Roosevelt secured a private paternity test for himself and R.J.P. On March 18, 2003, Roosevelt received the paternity results which he claims prove he is not the biological father of R.J.P. On March 21, 2003, Roosevelt filed an original petition for divorce with the trial court under cause number 03–14736, a different cause number than the Attorney General's motion to modify. On May 19, 2003, the trial court, without receiving a request for a hearing or a response from Roosevelt to the Attorney General's motion to modify, increased Roosevelt's monthly child support obligations from $205 to $420 in accordance with the Attorney General's request.

On June 9, 2003, Roosevelt filed an amended divorce petition seeking to voluntarily terminate the parent-child relationship. Contemporaneously, Roosevelt filed a motion under cause number 98–14343 seeking to terminate child support and withholding based on his claim that he is not the biological father of R.J.P. On November 5, 2003, the trial court consolidated both cause numbers into cause number 98–14343.

■ At a hearing on the matter, the trial court took judicial notice of the entire contents of the files in the case, including the 1998 order establishing Roosevelt's biological paternity. Afterwards, Roosevelt sought to introduce paternity results establishing he is not the biological father of R.J.P. Over the Attorney General's objections, the trial court admitted the paternity results into evidence.[1] Contemporaneously, the trial court ordered Roosevelt, Anita, and R.J.P. to submit to a court ordered paternity test before the next hearing. In support of its order to obtain genetic testing, the trial court stated:

> It think it's very important that we establish, without any doubt, for any party, Mom or Dad or your child, who her father is. There is [sic] good health reasons if she ever needs to have any sort of transplant-type stuff for us to have a bone marrow transplant, it's so important to know that a whole other family might exist to be possible donors of, both, of anything that may be needed from a health standpoint.

---

1. The Attorney General did not plead res judicata or collateral estoppel as an affirmative defense in its answer to Roosevelt's petition as required by Texas Rule of Civil Procedure 94. *See* Tex.R. Civ. P. 94 (requiring party to plead affirmative defenses in pleading to a preceding pleading). However, Roosevelt did not object when the Attorney General orally objected to the introduction of the paternity results at trial based on its prior adjudication. Because Roosevelt did not object, the affirmative defenses of res judicata and collateral estoppel were tried by consent of the parties. *See* Tex.R. Civ. P. 67; *Mastin v. Mastin,* 70 S.W.3d 148, 154 (Tex.App.-San Antonio 2001, no pet.) (holding the affirmative defense of notice was tried by consent where husband did not plead notice as a defense and wife did not object to lack of pleadings when the defense was argued at trial); *Whitley v. Whitley,* 566 S.W.2d 660, 662 (Tex.App.-Beaumont 1978, no writ) (holding the affirmative defense of res judicata was tried by consent when it was not properly raised in husband's pleadings because wife did not object to husband's oral plea of res judicata as being improperly pled).

■ At the follow-up hearing, the trial court learned that Anita and R.J.P. failed to obtain the court ordered genetic test, and over objection, the trial court re-admitted the privately secured paternity results into evidence.[2] On February 20, 2004, the trial court granted the parties a divorce, eliminated withholding, and decreased Roosevelt's monthly child support obligation from $420 to zero without changing Roosevelt's status as R.J.P.'s father.[3] To support the modification, the trial court's amended findings of fact and conclusions of law state Roosevelt "may not be the biological father of the minor child."

## II. DISCUSSION

On appeal, the Attorney General contends the trial court erred when it modified Roosevelt's monthly child support obligation to R.J.P. from $420 to zero because the determination was based on inadmissible paternity results. Specifically, the Attorney General contends the trial court should not have considered the paternity results because collateral estoppel and res judicata bar the issue of parentage from being relitigated because the paternity results contradict a court order almost five years earlier.

### A. Standard of Review

■ In determining questions of child support, the trial court's primary consideration must always be the best interest of the child. *Clark v. Jamison*, 874 S.W.2d 312, 316 (Tex.App.-Houston [14th Dist.] 1994, no writ). Trial judges have wide discretion with respect to child support. *Dennis v. Smith*, 962 S.W.2d 67, 68 (Tex. App.-Houston [1st Dist.] 1997, pet. denied). Questions concerning the admission and exclusion of evidence are reviewed under an abuse of discretion standard. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). We will reverse only if the trial court abused its discretion by acting without reference to any guiding rules or principals or by acting arbitrarily or unreasonably. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex.2003); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). A trial court has no discretion in deciding what law applies or in applying the law to the facts of the case. *In re Kuntz*, 124 S.W.3d 179, 181 (Tex.2003) (orig.proceeding); *accord In re D.S.*, 76 S.W.3d 512, 516 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (failing to analyze or construe law correctly constitutes abuse of discretion). We will not

2. The record reveals R.J.P. moved to Tennessee at the end of June 2003 to live with Anita's sister for the summer and the following school year. The trial court was aware when it issued the October 2003 genetic testing order that R.J.P. would be available to receive the genetic testing over the Christmas holidays while she was visiting Houston.

3. The divorce decree conflicts with the trial court's amended findings of fact and conclusions of law. Under the heading *"CHILD SUPPORT,"* the divorce decree orders "that *Respondent* shall not be required to pay child support effective from the 9th day of June, 2003." (emphasis added). The first paragraph of the divorce decree identifies Anita as the *Respondent* and Roosevelt as the *Petitioner*. Therefore, the "four corners" of the di-

vorce decree does not, in fact, reduce Roosevelt's monthly child support obligation to zero.

However, the trial court's amended findings of fact and conclusions of law filed after the judgment clearly establish that Roosevelt's child support obligation is terminated. Findings of fact and conclusions of law filed after a judgment are controlling if they conflict with a previous judgment. *Capital Senior Mgmt. 1, Inc., v. Tex. Dep't of Human Servs.*, 132 S.W.3d 71, 74 n. 3 (Tex.App.-Austin 2004, pet. denied); *Dickerson v. DeBarbieris*, 964 S.W.2d 680, 684 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Therefore, Roosevelt's monthly child support obligation was modified.

reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a)(1); *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998).

**B. Was Biological Paternity Adjudicated in an Earlier Proceeding?**

■ Paternity, although uncontested, was an issue addressed and resolved by the trial court in the 1998 Suit Affecting the Parent Child Relationship. The agreed order establishes Roosevelt and Anita as "the biological parents" of R.J.P. and provides for child support, conservatorship, and visitation. An agreed order "is accorded the same degree of finality and binding force as a final judgment rendered at the conclusion of an adversary proceeding." *McCray v. McCray*, 584 S.W.2d 279, 281 (Tex.1979); *see* TEX. FAM. CODE ANN. § 160.637(a)(2) (Vernon 2002) (stating a determination of parentage is binding on all parties to an adjudication by a court acting under circumstances satisfying the jurisdictional requirements of Texas Family Code section 159.201). Thus, the finding within the 1998 order that Roosevelt is the biological father of R.J.P. has been adjudicated and has the binding effect of a final judgment rendered at the conclusion of an adversary proceeding.

**C. Was the Adjudicated Fact Properly Challenged?**

According to section 160.637(e) of the Texas Family Code, Roosevelt can only challenge the adjudicated fact of biological paternity "under the laws of this state relating to appeal, the vacating of judgments, or other judicial review." TEX. FAM. CODE ANN. § 160.637(e) (Vernon 2002). Roosevelt did not file any motions with the trial court after the 1998 adjudication, did not challenge the 1998 order on appeal, and he did not file a bill of review. *See* TEX.R. CIV. P. 329b(d), (f). Because

Roosevelt did not challenge the 1998 order adjudicating his biological paternity "under the laws of this state," we must determine whether the trial court was barred from relitigating Roosevelt's biological paternity in determining his child support obligation.

**D. Was the Trial Court Barred from Relitigating Biological Paternity?**

■ To bar an action on the basis of collateral estoppel, the movant must prove the following elements: (1) the same fact issue from the first suit is sought to be litigated in the second suit; (2) the fact issue was essential to the judgment in the first suit; and (3) the parties were cast as adversaries in the first suit. *In re T.S.S.*, 61 S.W.3d 481, 485 (Tex.App.-San Antonio 2001, pet. denied) (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy*, 962 S.W.2d 507, 521 (Tex.1998)).

■ The doctrine of collateral estoppel bars relitigation of biological paternity in a subsequent suit. *See Dreyer v. Greene*, 871 S.W.2d 697, 697–98 (Tex.1993) (holding trial court's adjudication of biological paternity within a divorce decree barred any subsequent assertion of parentage to the contrary); *In re T.S.S.*, 61 S.W.3d at 485 (holding collateral estoppel barred father from relitigating a paternity finding in divorce decree with DNA results as a defense to paying child support); *Byrd v. Travelers Ins. Co.*, 275 S.W.2d 861, 863 (Tex.Civ.App.-San Antonio 1955, writ ref'd n.r.e.) (holding parents of deceased worker were barred from relitigating a paternity finding in divorce decree which found their son had fathered a son during his marriage); *see also* TEX. FAM.CODE ANN. § 159.315 (Vernon 2002) (providing that "[a] party whose parentage of a child has been previously determined by or under law may not plead nonparentage as a defense to a proceeding under [the Uniform Interstate Family Support Act]"); *Baize v.*

*Baize*, 93 S.W.3d 197, 201 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (recognizing the principals of res judicata and collateral estoppel but distinguishing the facts because the issue of paternity was raised before the trial court signed a final judgment). Consistent with the aforementioned cases, the doctrine of collateral estoppel barred Roosevelt from relitigating the finding that he is the biological father of R.J.P.

This issue of biological paternity could have been litigated in 1998. By his own admission, Roosevelt harbored doubts about his biological paternity to R.J.P. in 1997 and could have obtained genetic testing before he signed the 1998 order; however, he chose not to do so. Roosevelt did not challenge his adjudication of biological paternity until eleven years after R.J.P.'s birth and more than four years after the 1998 original adjudication. In the aftermath of an increased child support obligation, Roosevelt sought to relitigate the previously adjudicated fact issue. The 1998 judgment at issue in this case "should not be set aside because one of the individuals involved has become unhappy with the continued existence of it." *Ince v. Ince*, 58 S.W.3d 187, 191 (Tex.App.-Waco 2001, no pet.).

We conclude collateral estoppel barred the issue of Roosevelt's biological paternity from being relitigated in this suit because: (1) Roosevelt's biological paternity was litigated in a prior suit; (2) the issue of Roosevelt's paternity was essential to the 1998 judgment; and (3) the same parties were cast as adversaries in the first suit.[4] Thus, the trial court abused its discretion when it considered the paternity results in its determination of Roosevelt's child support obligation.

**E.  Was the Trial Court's Consideration of Paternity Harmful Error?**

To rebut the child support guidelines presumed to be in the best interest of the child, pursuant to section 154.123 of the Texas Family Code, the trial court's amended findings of fact and conclusions of law considered the following:

(1) That the minor child was not residing with [Anita], but has been residing with her aunt since June, 2003, in the State of Tennessee and is enrolled in School in Tennessee, while both parents reside in Houston, Harris County, Texas;

(2) That [Roosevelt] has been unable to exercise visitation consistently with the minor child since June of 2003;

(3) That [Roosevelt] was only furnished the child's telephone number after an August 27, 2003, hearing in this matter and had not known the whereabouts of the child or how to contact the child. The Court ordered [Anita] to produce the telephone number of the child; and,

4.  The dissent, without any authority, contends reliance on collateral estoppel and res judicata are inappropriate in the context of a parent-child relationship because, for example, the trial court maintains continuous, exclusive jurisdiction and has the authority to modify the terms of that relationship as changing circumstances require. I respectfully disagree that litigation of biological paternity is a changing circumstance. As discussed herein, biological paternity could have been litigated in 1998. Allowing parties to relitigate this issue would burden the courts and traumatize the child, an outcome this court should not sanction. *See, e.g., John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288–89 (Tex.2002) ("'[R]es judicata and collateral estoppel both serve 'the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.'" (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979))).

(4) That Petitioner, [Roosevelt], may not be the biological father of the minor child ...

*See* TEX. FAM.CODE ANN. § 154.123 (Vernon 2002).

We hold the trial court's erroneous consideration of biological paternity in this case was harmful, in that it probably caused the rendition of an improper judgment. We can find no basis in the record supporting the trial court's determination that modifying Roosevelt's child support obligation to zero dollars is in R.J.P.'s best interest. *See* TEX.R.APP. P. 44.1(a). We sustain appellant's first issue.

## III.  CONCLUSION

Having found harmful error, we reverse the portion of the trial court's judgment modifying Roosevelt's child support obligation to zero and remand for further proceedings.[5] Because of our disposition of appellant's first issue, we need not address appellant's other issues.

YATES, J. concurs in result only.

HUDSON, J. dissents.

J. HARVEY HUDSON, Justice, dissenting.

The majority holds that res judicata and collateral estoppel may bar a "father" from relitigating his paternity. Certainly, there is precedent for this position. However, because such precedent is neither persuasive nor controlling upon this court, I must respectfully dissent.

The record shows Anita and Roosevelt were married in 1988. They separated in 1991. Four months after separating, R.J.P. was born. In 1998, while still married, but living apart, Anita and Roosevelt entered into an agreed child support order in which Roosevelt was identified as the father of R.J.P. Pursuant to this order, Roosevelt began paying monthly child support. In 2003, the trial court increased the monthly child support obligation and entered an order withholding earnings to satisfy the child support obligation. Roosevelt then petitioned the trial court to terminate the order for wage withholding based on the fact that he is not the biological father of R.J.P. Roosevelt also filed a petition for a decree of divorce in which he again asserted that he is not the biological father of R.J.P. To support his contention, R.J.P. tendered a DNA Parentage Test Report made by DNA Diagnostic Center. Thereafter, the trial court ordered Anita and Roosevelt to submit themselves for DNA parentage testing at a lab designated by the court. Roosevelt complied with the court's order, but Anita did not.

In 2004, the trial court entered a decree of divorce in which it acknowledged that Roosevelt had previously been adjudicated as the father of R.J.P. Accordingly, Roosevelt was named the possessory conservator of the child. However, the trial court did not order Roosevelt to make child support payments.

Although paternity, or the lack thereof, may now be scientifically determined to a virtual certainty, courts have historically disfavored suits to disestablish paternity even when absence, impotence, or sterility have seemed to conclusively support the plaintiff's cause. Social policy considerations such as protecting the institution of marriage or the welfare of children have taken precedence over truth and equity. *See* Mary R. Anderlik, *Disestablishment Suits: What Hath Science Wrought?*, 4 J. CENTER FOR FAMILIES 3, at 5 (2003). Other

---

5.  If the error affects only part, but not all of the case, a judgment may be reversed only as to the part affected by the error. *See* TEX. R.APP. P. 44.1(b); *see also* TEX.R.APP. P. 61.2.

courts have emphasized the need for finality. *See In re T.S.S.*, 61 S.W.3d 481, 485 (Tex.App.-San Antonio 2001, pet. denied) ("Texas courts are not free to adopt a rule that an adjudicated father may be relieved of his support obligations anytime he comes forward with DNA evidence post-decree that tends to exclude him as the biological father."); *Wise v. Fryar*, 49 S.W.3d 450, 456 (Tex.App.-Eastland 2001, pet. denied), *cert. denied*, 534 U.S. 1079, 122 S.Ct. 808, 151 L.Ed.2d 694 (2002) (holding bill of review was not available to challenge paternity where the issue of paternity was resolved in a final, unappealed judgment).

However commendable the goal of protecting marriage, that institution is founded upon fidelity and trust. Once the confidence of a spouse is betrayed, reconciliation is difficult. Moreover, the welfare of children should not fall upon one who is merely a victim of fraud. Finally, reliance upon the doctrines of collateral estoppel and res judicata seems inappropriate in the context of a parent-child relationship. For example, in a suit affecting the parent-child relationship the trial court maintains continuing, exclusive jurisdiction over the parties and has the authority to modify the terms of that relationship as changing circumstances may require. To require a husband to challenge the filial relationship of what he believes to be his children (or forever waive the issue) would seem to needlessly encourage suits that must, of necessity, drive a wedge between father and child, threaten the already fragile sense of security of children caught up in the midst of a divorce, and perhaps forever damage the psyche of both the father and his children.

Here, the trial court did not disestablish paternity. Rather, the court modified the former husband's child support obligation.

In making this decision, the trial court was vested with broad discretion. The Family Code provides that the trial court "may" order either or both parents to support a child. TEX. FAM.CODE ANN. § 154.001(a) (Vernon 2002). While the trial court "may" consider the statutory child support guidelines, the court "may" also consider any "other relevant evidence in addition to the factors listed in the guidelines." TEX. FAM.CODE ANN. § 156.402 (Vernon 2002). The court "may," in fact, determine that the application of the guidelines would be unjust or inappropriate under the circumstances. TEX. FAM.CODE ANN. § 154.122(b) (Vernon 2002).

It is well established that matters regarding the exercise of discretion are within the sole province of the trial court, and the appellate court may not substitute the discretion of the trial court with its own. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992); *Garza v. Blanton*, 55 S.W.3d 708, 710 (Tex.App.-Corpus Christi 2001, no pet.). If there is some probative and substantive evidence to support the judgment, the trial court did not abuse its discretion. *In re P.J.H.*, 25 S.W.3d 402, 405 (Tex. App.-Fort Worth 2000, no pet.).

I would find the trial court did not abuse its discretion in deleting future child support. Accordingly, I must respectfully dissent.