

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-24-00798-CV

George Michael **LORKOVIC**,
Appellant

v.

Alexis Danielle **LORKOVIC**,
Appellee

From the 456th District Court, Guadalupe County, Texas
Trial Court No. 23-2367-CV-E
Honorable Heather H. Wright, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                Adrian A. Spears II, Justice

Delivered and Filed: April 29, 2026

AFFIRMED IN PART AND REVERSE AND REMANDED IN PART

George Michael Lorkovic appeals from a final decree of divorce that dissolves his marriage

with Alexis Danielle Lorkovic, orders him to pay child support, and permanently enjoins him in

several respects. George[1] contends we should reverse several of the injunctions because they are

not supported by Alexis's pleadings and because they do not comport with the trial court's oral

---

[1] Because the parties share a surname, we refer to them by their given names for ease of reference. We refer to the only child of their marriage as "child" to protect the child's identity. *See* TEX. FAM. CODE ANN. § 109.002(d).

rulings. He also contends that the trial court erred by ordering child support because the matter was not considered at trial and because the trial court purportedly granted a new trial on the matter. For the following reasons, we affirm the final decree of divorce in all respects other than as to child support. We reverse the decree only insofar as it orders George to pay Alexis child support, and we remand for further proceedings on this matter.

## BACKGROUND

George and Alexis were married in 2016 and have one child together. In September 2023, George filed a petition for divorce; and, in October 2023, Alexis filed a counterpetition. In her counterpetition, Alexis requested the following permanent injunction be imposed on George: "No harmful contact with Counterpetitioner."

In December 2023, the trial court signed temporary orders that required George to pay Alexis $650.00 per month in child support until further order. At that time, their child was six years old. The temporary orders also enjoined the parties from coming within 100 feet of each other.

In February 2024, the trial court held a one-day bench trial, at which George and Alexis testified. George testified that he received most of his income through Social Security and that he occasionally supplemented this income through work as an independent contractor. George testified that he received $1,281.00 per month from Social Security and an additional $881.00 per month from Social Security attributable to the child. Additionally, George claimed Alexis initiated physical altercations towards him during their marriage, but he denied committing physical violence against Alexis or her sons from a prior relationship.

Alexis testified that she was the provider in the marriage and paid the family's bills with Social Security income she received and with income from her "side jobs." At the time of trial,

Alexis worked at the child's school. When asked: "So then, you're asking the court for a permanent injunction from having Mr. Lorkovic around you. And how much space do you think is going to be enough for you to feel safe?" Alexis responded:

> Well, I don't think that 100 feet was enough. He would come by the school often when I was there and it was very uncomfortable, not just for me, but for teachers, because he caused a ruckus in the school and a lockdown and— So I guess 200 yards? I don't know what the magic number is, but 100 feet just wasn't cutting it.

Further, Alexis testified that during the marriage George shoved and slapped her and shoved her older son. On cross-examination, Alexis acknowledged refusing George visitation with their child while the case was pending, claiming:

> Because he was untrustworthy. He had stolen the utility trailer off the property. He had removed every single item of [the child]'s out of our home—his bed, his clothing, his toys, his shoes, his jackets—every item, and has a utility trailer missing, I was assuming he was going to take my son. And when I asked him about it in the app,[2] he would not answer the question.

Both George and Alexis testified regarding property division. At the conclusion of trial, the trial court stated:

> I'm not going to go line by line [through a property inventory], so the two of you are going to figure it out, and just 50/50 it. . . .

> The parties will be designated as joint-managing conservators. Mom will have the right to designate the primary residence and enroll the child in school. Dad will have expanded standard visitation. . . .

> There will be a Loving and Caring order and Children's Bill of Rights as injunctions enforceable by contempt. I don't want anything negative said about Mom or Dad to this child. . . .

> . . . .

> The parties will communicate by AppClose, except in an emergency. . . .

> . . . The Petitioner is ordered to never go to the Respondent's residence.

> . . . .

---

[2] Alexis referred to AppClose, a messaging application that the trial court ordered the parties to use.

He'll be responsible for child support. Out-of-pocket expenses for the child will be split 50/50.

A final divorce decree was not signed until September 2024. The divorce decree appoints the parents as joint managing conservators of the child. Relevant to this appeal, the decree states:

The Court finds that, because of the conduct of George Michael Lorkovic, a permanent injunction against him should be granted as appropriate relief because there is no adequate remedy at law.

. . . .

IT IS ORDERED AND DECREED that George Michael Lorkovic is permanently enjoined from:

1.      Causing physical contact or bodily injury to Alexis Danielle Lorkovic or threatening Alexis Danielle Lorkovic with imminent bodily injury.

2.      Communicating in person, by telephone, or in writing with Alexis Danielle Lorkovic, except for arranging visitation or notifying Alexis Danielle Lorkovic of circumstances affecting the best interest of the child.

3.      Coming within 100 feet of, entering, or remaining on the premises of the residence of Alexis Danielle Lorkovic, located at [redacted]. Coming within 100 feet of, entering, or remaining on the premises of the place of employment of Alexis Danielle Lorkovic for any purpose, except to exercise visitation granted in this decree.

4.      Interfering in any way with the Managing Conservator's possession of the child or taking or retaining possession of the child, directly or in concert with other persons, except as permitted by order of the Court.

The divorce decree also orders George to pay Alexis monthly child support of $650.00 until the child turns eighteen or graduates from high school, whichever occurs later. The decree states: "The amount of child support ordered by the Court is in accordance with the percentage guidelines."

In October 2024, George filed a motion for new trial. At the hearing on the motion, George's attorney argued that Alexis had not pled or argued for injunctions that limited communications between the parties or enjoined George from coming within 100 feet of her place

of employment. In addition, the attorney argued that the trial court had not orally ruled on the amount of child support.

In response to these arguments, the trial court stated:

I will say my injunction was intended, per the record, to be her residence. I'd like it modified to reflect that, although I'm not sure why he'd need to go to her place of employment now that the child is not there, so keep that in mind.[3]

And I'm not sure—I disagree that there can't be a permanent injunction on not committing physical harm against her, based upon the evidence and the testimony that I heard.

. . . .

[I]t was in the best interest of the child and the best interest of the parties and this case as a whole[] that that be an injunction. So that, I'm not changing.

And then in terms of the motion for new trial on the communication, modify it, Counsel. I'll grant it. But here's my ruling on it. No harassing, threatening conversations or conduct of any kind. Communication is only about the child, and that will be an injunction enforceable by contempt.

. . . .

The decree will be modified, based upon what I said here today, to be the residence, the physical harm, harassing or threatening, combative—the standard be-nice language, basically[.]

As to child support, the trial court explained at the hearing that it had intended for the parties to calculate the amount of child support and raise the matter with the court prior to entry of the divorce decree if there had been a disagreement.[4] Later at the hearing, the trial court stated: "If we need to have a—if we need to have a hearing because you disagree on his calculations, . . .

---

[3] According to the attorneys, sometime after trial concluded, Alexis removed the child from the school he attended—and where Alexis worked—and began to homeschool him.

[4] The trial court stated: "If I ask lawyers to figure out what the amount [of child support] is, because y'all have the documentation, then I would expect if there was a disagreement on the amount, that I would be told before the final decree was entered."

submit to me what your calculations are, and I'll make a decision." Despite these statements, the trial court never signed a written order granting George's motion for new trial.

George timely appealed. On appeal, George asserts three issues. In his first two issues, George asks that we reverse and render judgment vacating the injunctions contained in the final decree of divorce. In his third issue, he requests that we reverse the child support award in the divorce decree and remand for a new trial on child support. Although Alexis was represented by counsel at trial, she is proceeding pro se on appeal. We struck Alexis's first appellee's brief for failure to comply with the applicable appellate rules, and she has not filed an amended brief. Nevertheless, the burden remains with George to establish reversible error. *See* TEX. R. APP. P. 44.1; *Wheelock v. Kerr Cnty.*, No. 04-22-00349-CV, 2023 WL 2144301, at *5 (Tex. App.—San Antonio Feb. 22, 2023, no pet.) (mem. op.) (explaining court would not reverse, even if it disregarded appellee's brief, because neither appellant's brief nor the court's review of the record revealed reversible error).

## INJUNCTIONS

George presents as a first issue: "Where drafting Final Order is a ministerial act after Court's rendition, is it reversible error to include rulings not made by the Court where Court grants a new trial on the record, but does not enter a written order?" His second issue asks: "Where Petition for Divorce failed to pray for injunctions, does the Court err[] granting injunctive relief."

### A. __Pleading__

We begin with George's second issue and overrule it. The trial court did not err by granting injunctive relief to Alexis, even though she did not plead for all the injunctive relief the trial court granted.

The trial court ordered four injunctions. The first enjoins George from "[c]ausing physical contact or bodily injury to Alexis Danielle Lorkovic or threatening Alexis Danielle Lorkovic with imminent bodily injury." Alexis's counterpetition for divorce prayed for a permanent injunction of: "No harmful contact with Counterpetitioner." The trial court's first injunction was supported by Alexis's pleading. *See* TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings[.]").

As to the second, third, and fourth injunctions, those concern the child. The second prohibits communication between George and Alexis, except as it concerns visitation or notifying Alexis of circumstances affecting the child's best interest. The third prohibits George from coming within 100 feet of Alexis's residence, where she resided with the child, or within 100 feet of Alexis's place of employment, "except to exercise visitation granted in this decree." The fourth, prohibits George from "[i]nterfering in any way with the Managing Conservator's possession," except as permitted by court order.

Although these injunctions are not supported by Alexis's pleadings, this failure does not imply error because the injunctions concern the child. The parties' divorce petitions invoked the trial court's jurisdiction over custody and control of their minor child. "[O]nce the child is brought under [the court's] jurisdiction by suit and pleading cast in terms of custody and control, it becomes the duty of the court in the exercise of its equitable powers to make proper disposition of all matters comprehended thereby in a manner supported by the evidence." *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967). The Texas Family Code, moreover, specifically allows a trial court to "limit the rights and duties of a parent appointed as a conservator if the court makes a written finding that the limitation is in the best interest of the child." TEX. FAM. CODE ANN. § 153.072; *see also id.* § 153.002(a) ("The best interest of the child shall always be the primary consideration of the court

in determining the issues of conservatorship and possession of and access to the child."). "[B]ecause injunctions in family law cases are determined by the best interests of the child, courts have overlooked technical rules of pleading and practice and found that fair notice is afforded when the pleadings generally invoke the court's jurisdiction over custody and control of a child." *In re Marriage of Keys*, No. 06-19-00018-CV, 2019 WL 4865671, at *4 (Tex. App.—Texarkana Oct. 3, 2019, no pet.) (mem. op.) (citation and internal quotation marks omitted);[5] *see also MacCallum v. MacCallum*, 801 S.W.2d 579, 586 (Tex. App.—Corpus Christi 1990, writ denied) ("Pleadings are of little importance in child custody cases and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings.").

George does not contend that the injunctions in the divorce decree are not supported by evidence. *Cf. In re S.C.T.*, No. 09-23-00044-CV, 2025 WL 635082, at *37 (Tex. App.—Beaumont Feb. 27, 2025, pet. denied) (mem. op.) (affirming permanent injunction in divorce decree where "some evidence of a substantive and probative character" supported the prohibition). Nor does he contend that the trial court failed to make necessary findings on best interest. In fact, the divorce decree states: "The Court, having considered the circumstances of the parents and of the child, finds that the following orders are in the best interest of the child." *In re B.M.B.*, No. 05-20-00852-CV, 2022 WL 3226277, at *5 (Tex. App.—Dallas Aug. 10, 2022, pet. denied) (mem. op.) (affirming injunctions although final order did not contain a specific best-interest finding in the section limiting father's rights). More generally, beyond asserting error based on the lack of specific pleadings, George does not contend that the trial court abused its discretion by entering

---

[5] Alexis filed a "Motion to Deny New Trial" in response to George's motion for new trial, and, in her filing, Alexis cited to *In re Marriage of Keys*, No. 06-19-00018-CV, 2019 WL 4865671, at *4 (Tex. App.—Texarkana Oct. 3, 2019, no pet.) (mem. op.). Additionally, her counsel discussed this case at the hearing on George's motion for new trial. Nevertheless, George's appellate brief does not address the case or the authority cited in the case.

the injunctions. *See In re I.M.M.*, No. 01-17-00415-CV, 2019 WL 1768998, at \*8 (Tex. App.—Houston [1st Dist.] Apr. 23, 2019, pet. denied) (mem. op.) ("[T]he trial court has discretion to place conditions on matters of possession even when the pleadings do not request such conditions.").

Therefore, considering the trial court's equitable powers to limit a parent's rights and duties in the child's best interest, and on this record, we hold George has not established reversible error, and we overrule his second issue. *See* Tex. Fam. Code Ann. §§ 153.002, 153.072; *Leithold*, 413 S.W.2d at 701.

**B.      Variance from Oral Rendition and Motion for New Trial**

In his first issue, George asks: "Where drafting Final Order is a ministerial act after Court's rendition, is it reversible error to include rulings not made by the Court where Court grants a new trial on the record, but does not enter a written order?" George contends that the trial court had a ministerial duty to enter a written judgment that comports with the judgment the trial court orally rendered at the conclusion of trial, and George contends this was not done. Additionally, he asserts, the "trial court rejected and modified" certain parts of the permanent injunctions in the written divorce decree at the hearing on his motion for new trial.

We overrule George's first issue because George has not established error based on a variance between the oral rendition of judgment and the written final decree of divorce and because George was never granted a new trial.

As to variance, George provides only this argument and authority in his brief:

> If the written order does not comport with the judgment rendered, the parties are entitled to have the order reformed to accurately reflect the action taken by the trial court. *Stallworth v. Stallworth*, 201 S.W.3d 338, 349 (Tex. App.—Dallas, 2006[, no pet.) (]citing Tex. R. Civ. P. 329(g)).

*Stallworth*, indeed, stands for this proposition, but the *Stallworth* court continued:

> However, until thirty days after the judgment is signed, the trial court has plenary power to vacate, modify, correct, or reform its judgment at any time before it becomes final. TEX. R. CIV. P. 329b(d); *Mesa Agro v. R.C. Dove & Sons,* 584 S.W.2d 506, 508 (Tex. Civ. App.—El Paso 1979, writ ref'd n.r.e.). During this period, the trial court's power to modify its judgment is virtually absolute. *Garza v. Serrato,* 671 S.W.2d 713, 714 (Tex. App.—San Antonio 1984, no writ). Judges' oral announcements are often necessarily tentative and may not cover all the details of a final decree since they know they will review the draft of judgment before signing it. *Kostura v. Kostura*, 469 S.W.2d 196, 198 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.).

201 S.W.3d at 349. The *Stallworth* court concluded, based on the record before it: "[T]he difference between the trial court's statement from the bench and its final divorce decree should actually be considered a modification that was well within the plenary power of the trial court at the time." *Id.*

As in *Stallworth*, the trial court here signed the final divorce decree within its plenary power; and, according to the reasoning in *Stallworth*, any variance between the oral rendition at the conclusion of trial and the written divorce decree "should actually be considered a modification that was well within the plenary power of the trial court at the time." *Id.* Thus, the authority George cites does not establish error.

Nor has George established that the trial court's oral statements at the motion-for-new-trial hearing alter the analysis. George asserts throughout his brief— without citation to authority—that the trial court "granted" his motion for new trial. However, under Texas Rule of Civil Procedure 329b(c), "an order granting a new trial or modifying, correcting, or reforming a judgment must be written and signed." *In re Lovito-Nelson*, 278 S.W.3d 773, 775 (Tex. 2009) (orig. proceeding) (citation omitted). A trial judge's oral pronouncement granting a motion for new trial cannot substitute for a written order. *See 21st Century Centennial Ins. Co. v. Ramirez*, 675 S.W.3d 356, 364 (Tex. App.—Corpus Christi–Edinburg 2023, orig. proceeding) (citing *Lovito-Nelson*, 278 S.W.3d at 775). Therefore, by citing no relevant authority, we hold that George has not established

that his motion for new trial was granted or, more generally, that the hearing on his motion establishes error.

In short, we overrule George's first two issues concerning the injunctions in the divorce decree because George has not established error. *See* TEX. R. APP. P. 44.1.

### CHILD SUPPORT

George contends in his third issue that the trial court erred when it set the child support amount because, "it requested the parties to resolve the matter on the record, and thereafter granted a new trial on the record." He directs us to the hearing on his motion for new trial, at which the trial court stated that it would hold a hearing on the amount of child support and decide if the parties could not agree on the calculation. However, for the reasons just explained, George has not established that the trial court granted his motion for new trial.

Nevertheless, an issue presented "will be treated as covering every subsidiary question that is fairly included." TEX. R. APP. P. 38.1(f). In his third issue, George argues the trial court abused its discretion by ordering child support in an amount that deviates from the guidelines in the Texas Family Code, and he refers us to his testimony on his income from Social Security. He also asserts, "Without considering the issue, the amount in the decree was arbitrary and capricious."

George's third issue fairly includes the subsidiary question of whether the trial court abused its discretion by awarding child support in an amount that deviates from the statutory guidelines. *See* TEX. R. APP. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."). We sustain George's issue only as to this subsidiary question.

When reviewing a child support order, we apply an abuse of discretion standard. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011); *In re R.H.B.*, 660 S.W.3d 136, 151 (Tex. App.—San Antonio

2022, no pet.). "A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles." *Iliff*, 339 S.W.3d at 78 (citation omitted). "A trial court also abuses its discretion by failing to analyze or apply the law correctly." *Id.* (citation omitted).

"A trial court has discretion to set child support within the parameters provided by the Texas Family Code." *Iliff*, 339 S.W.3d at 78; *see* TEX. FAM. CODE ANN. §§ 154.121–.133. The Family Code provides guidelines "generally requiring child support awards to be calculated based on a percentage of the obligor's monthly net resources and the number of children." *Mehta v. Mehta*, 716 S.W.3d 126, 137 (Tex. 2025) (Lehrmann, J., concurring) (citing TEX. FAM. CODE ANN. §§ 154.125(b), 154.126). While variances are allowed, they must be supported by findings. *See* TEX. FAM. CODE ANN. § 154.130(a)(3), (b); *Aguilera v. Aguilera*, No. 04-13-00034-CV, 2014 WL 769445, at *2 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op.) (holding it was harmful error when trial court failed to make findings to support variance between amount of child support ordered and guideline amount).

The testimony indicates that George's actual income was approximately $2,162.00 from Social Security, with additional amounts from occasional paid work; however, these additional amounts were not specified. George testified that his resources include Social Security checks in the amount of $1,281.00 per month and another $881.00 per month attributable to the child. He also testified that he "would make other money from time to time" to supplement his governmental assistance, but he did not specify those amounts. Alexis testified that George never worked a "regular job," and she also did not specify any amounts of income beyond George's Social Security income. Further, Alexis never argued that George was intentionally unemployed or underemployed. *See Iliff*, 339 S.W.3d at 82 (explaining obligee bears burden of showing that obligor is intentionally unemployed or underemployed for purpose of child-support calculation).

In short, the trial court had no basis on this record to assume anything more than approximately $2,162.00 as George's net resources. This amount would suggest an amount of child support for one child of approximately $324.00–$432.00 per month (15% to 20% of net resources) under the statutory guidelines. *See* TEX. FAM. CODE ANN. § 154.125. The trial court ordered child support of $650.00 per month. Although the divorce decree states: "The amount of child support ordered by the Court is in accordance with the percentage guidelines," the trial evidence does not support this statement. Moreover, the divorce decree does not include findings that could explain a variance from the guideline amount. *See id.* § 154.130(a)(3), (b).

Therefore, we conclude the trial court abused its discretion because it acted "arbitrarily or unreasonably, without reference to guiding rules or principles" when it ordered child support in the amount of $650.00 per month. *See Iliff*, 339 S.W.3d at 78 (citation omitted); *see In re A.M.P.*, 368 S.W.3d 842, 847 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding trial court abused its discretion in ordering an amount of child support that varied from the guideline amount because it failed to make required findings to support the variance); *see also Trumbull v. Trumbull*, 397 S.W.3d 317, 321 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("[T]o support a finding of intentional underemployment, it is not enough to simply establish that the obligor is failing to maximize his potential.").

## CONCLUSION

We affirm the final decree of divorce, except with respect to child support. We reverse the order of child support in the decree and remand this cause to the trial court for further proceedings on child support consistent with this opinion. *See* TEX. R. APP. P. 44.1(b); *Gamboa v. Gamboa*, 383 S.W.3d 263, 274 (Tex. App.—San Antonio 2012, no pet.) (reversing divorce decree only as to division of property and remanding); *In re R.J.P.*, 179 S.W.3d 181, 187 (Tex. App.—Houston

[14th Dist.] 2005, no pet.) (reversing divorce decree only as to modification of child support and remanding).

Irene Rios, Justice